UNITED STATES of America,
Plaintiff–Appellee,

v.

William Bruce HARE,
Defendant–Appellant.

No. 88–4831.

United States Court of Appeals,
Fifth Circuit.

May 15, 1989.

Lester J. Gauthier, Jr., (court-appointed), Lafayette, La., for defendant-appellant.

Judith A. Lombardino, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before RUBIN, POLITZ, and JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A defendant indicted for participation with 169 others in an extensive drug trafficking conspiracy appeals the district court's refusal to release him from custody based on the risk that he will flee and the risk that he will continue trafficking in drugs while awaiting trial. He also protests the court's failure to grant him a new evidentiary hearing. He has been detained for over ten months pending trial, which is presently set to begin more than five months hence. The issue presented is whether, under the Bail Reform Act and the Fifth and Eighth Amendments, a defendant may be so detained when the trial court has granted a one-year exception to the Speedy Trial Act requirement that trial begin within 70 days from the indictment. We conclude that the district court did not err in its construction and application of the Bail Reform Act, but did fail to consider all the relevant factors in assessing the defendant's due-process claim. We therefore remand for an evidentiary hearing on the issue.

I.

Hare was indicted, together with 169 others, for conspiring to import over one million pounds of marijuana into the United States. Following Hare's arrest on June 15, 1988, the government moved, pursuant to the Bail Reform Act,[1] to detain him without bail. A magistrate for the United States District Court for the Eastern District of Michigan held a hearing on June 17, 1988, at which an FBI special agent testified that Hare had prior drug-related convictions, he was still subject to a parole term, he had disposed of a considerable quantity of cocaine as the agents entered his home to arrest him, and he had possessed 55 grams of cocaine when he was arrested. Hare presented no witnesses but cross-examined the agent to establish that following two previous convictions the court had allowed him to report directly to the federal prison. Hare also submitted his pretrial services report, which has no indication of any probation or parole violation. The magistrate ordered Hare detained on the basis that there was probable cause to believe he had committed an offense carrying a maximum term of imprisonment of ten years or more, thus raising a presumption, not sufficiently rebutted by

1. 18 U.S.C. § 3141, *et seq.*

Hare, that no condition or combination of conditions would reasonably assure his appearance as required and the safety of the community. The magistrate explained, "Defendant has a long history of drug related charges, faces substantial incarceration in [sic] the 16 counts of the indictment, and was found in possession of cocaine at the time of arrest. Defendant has not rebutted the presumption of risk of flight and defendant's release would pose a danger to the community of future narcotic use and/or trafficking." The magistrate further found that even if Hare had not possessed cocaine when he was arrested, the evidence presented did not rebut the presumption.

The case was removed to the Western District of Louisiana where Hare moved to revoke the detention order and to have a second evidentiary hearing on his pretrial detention. Following a recommendation from a magistrate, the district court, having independently reviewed the record, denied the motion.

On August 28, 1988, the district court continued the trial date, based on an exception in the Speedy Trial Act that allows extended time when an early trial date would not serve the "ends of justice." [2] The court explained that because of the large number of defendants charged and the complexity and uniqueness of some of the legal and factual questions involved, the government could not be expected to effectively prepare without the extension. After a status conference, the court set the trial date for October 16, 1989.

## II.

Absent an error of law, we must uphold a district court's pretrial detention order "if it is supported by the proceedings below," a deferential standard of review that we equate to the abuse-of-discretion standard.[3] The same standard applies to a determination in response to a motion to revoke a detention order, pursuant to 18 U.S.C. § 3145(b), and a motion for a new evidentiary hearing, pursuant to 18 U.S.C. § 3142(f).

## A.

■ Under the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community. The existence of probable cause to believe that the defendant committed a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act [4] creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community.[5] The risk of continued narcotics trafficking on bail constitutes a risk to the community.[6]

■ The presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion.[7] However, that presumption is not a mere "bursting bubble" that totally disappears from the judge's consideration after the defendant comes forward with evidence. Following the approach the First Circuit employed in *United States v. Jessup*, we have held that Congress intended that the presumption "remain [ ] in the case [as] a factor to be considered by the judicial officer." [8] Thus the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders

---

2. 18 U.S.C. § 3161(h)(8)(A).

3. *See United States v. Jackson,* 845 F.2d 1262, 1263 (5th Cir.1988) (citing *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985)).

4. 21 U.S.C. § 801, *et seq.*

5. 18 U.S.C. § 3142(e).

6. *See United States v. Hawkins,* 617 F.2d 59 (5th Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 355, 66 L.Ed.2d 215 (1980).

7. *See United States v. Fortna,* 769 F.2d 243, 251–52 (5th Cir.1985) (following *United States v. Jessup,* 757 F.2d 378, 380–84 (1st Cir.1985)).

8. *Id.* at 251.

pose a special risk of flight and dangerousness to society.[9] The statute thus seems to create an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance.

With respect to the finding of risk of flight, we note that the magistrate in Detroit erred in his application of the presumption. In his initial detention hearing, the defendant brought out on cross-examination that following his convictions in 1978 and 1985, the court allowed him to report directly to the federal prison and that the pretrial services report had no indication of any probation or parole violation. Hare had come forward with rebuttal evidence, yet the magistrate held that "[t]he defendant has not rebutted the presumption of risk of flight." Furthermore, the magistrate stated at the hearing, "[t]he Court further finds that the arguments *and the proofs presented on behalf of the defendant, while of some weight,* are not sufficient to rebut that presumption," which also suggests that he may have placed the burden of persuasion, as well as production, on the defendant.

■ In the proceeding in the Western District of Louisiana, the magistrate did not address this error of law but rather relied only on the risk of dangerousness to uphold the order. He found: "Based upon Mr. Hare's established record, it is a virtual certainty that he will continue his pattern of drug dealing if released on bail pending trial on these charges. His continued drug dealing does constitute a danger and threat to the community, and that fact alone justifies detention." This conclusion is supported by the record, since Hare offered no evidence to rebut the presumption that he would continue trafficking in drugs. Nor did Hare address the issue in his motion for review and revocation of the detention order. Since a detention order may rest on a determination that no condition or combination of conditions will reasonably assure

either the defendant's appearance *or* the safety of the community, the court did not abuse its discretion in refusing to set aside the detention order.

### B.

■ Hare seeks a second hearing on various statutory grounds. First, he seeks to have his sister, mother, and a friend testify that he appeared whenever required to do so during prior prosecutions. He would also offer evidence of his exemplary conduct as an electrician while detained and of the fact that his pretrial incarceration will last considerably longer than usual. Under the Bail Reform Act a hearing may be reopened at any time before trial "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of risk of flight or dangerousness]."[10] We agree with the district court that the testimony of Hare's family and friends is not new evidence. Nor can the length of his current or potential future detention be considered under this section since it is not material to the issue of risk of flight or dangerousness. Given Hare's past record of narcotics convictions and the seriousness of the present charges, the district court did not abuse its discretion in finding that Hare's work as an electrician and selection as a trustee while in detention is not sufficiently material to the issue of dangerousness to justify a second hearing.

■ Second, Hare contends that his detention violates the Bail Reform Act because Congress never intended that pretrial detention under § 3142 exceed the time limitations in the Speedy Trial Act.[11] In considering the Bail Reform Act, however, the Senate Judiciary Committee twice rejected proposals that it fix a specific time period beyond which a defendant could not be incarcerated before trial. The Senate Report noted:

---

**9.** *See* S.Rep. 225, 98th Cong., 2nd Sess. 19–20 (1983) [hereinafter S.Rep.] reprinted in 1984 U.S.Code Cong. & Admin.News 3182.

**10.** 18 U.S.C. § 3142(f).

**11.** *See* 18 U.S.C. § 3161.

One element of the District of Columbia Code provision not carried forward in section 3142(f) is its 60–day limitation on the detention period.... 18 U.S.C. 3161 [The Speedy Trial Act] specifically requires that priority be given to a case in which a defendant is detained, and also requires that his trial must, in any event occur within 90 days, *subject to certain periods of excludable delay* .... These current limitations are sufficient to assure that a person is not detained pending trial for an extended period of time.[12]

Congress was, therefore, aware of the exceptions to the 90–day rule of the Speedy Trial Act and anticipated that those exceptions would apply to detention under the Bail Reform Act. We do not interpret the statute to require release merely because a court has ordered a continuance of a trial date to a time beyond the 90–day period.

### III.

In seeking a new hearing, Hare also contends that detention under the Bail Reform Act as applied to him violates the Fifth and Eighth Amendments. We reject Hare's challenge under the excessive-bail clause of the Eighth Amendment as foreclosed by the Supreme Court's decision in *United States v. Salerno*, which held that "when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, [such as detention on the basis of risk of dangerousness], the Eighth Amendment does not require release on bail." [13]

Hare's due-process challenge, however, raises an issue expressly left open by *Salerno:* When does the duration of pretrial detention violate due process? In *Salerno,* the Supreme Court held that pretrial detention under the Bail Reform Act does not on its face violate the due-process clause of the Fifth Amendment.[14] Because pretrial

detention under the Act is regulatory, not penal, it does not constitute "impermissible punishment before trial" [15] that would violate due process. The Court carefully pointed out, however, that it expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." [16]

The magistrate's sole response to Hare's due-process claim was: "The fact that there will be an extended delay in trying this case is an unfortunate circumstance not of the court's making. That fact does not lessen the urgency of having Mr. Hare detained because of his risk of flight and his clear danger to the community." This fails to apply the correct legal standard because it ignores the length of the pretrial detention, a factor the Surpeme Court in *Salerno* recognized is relevant to a due-process analysis. The question is not whether the court is responsible for delay but whether by action of the government the defendant has been deprived of his constitutional rights.

■ Hare argues that incarceration for a period longer than that contemplated by the Speedy Trial Act[17] is a *per se* violation of due process. In *Salerno* the Supreme Court found that pretrial detention is regulatory, in part because "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." [18] That Act allows a trial judge to grant a continuance of a trial date "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." [19] In making this determination, the court may consider, as it did here, "[w]hether the case is ... so complex, due to the number of defendants, the nature of the prosecution, or

---

**12.** S.Rep. at 22 n. 63, reprinted in 1984 U.S.Code Cong. & Admin.News 3205.

**13.** 481 U.S. 739, 753, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987).

**14.** *Id.* at 752, 107 S.Ct. at 2104.

**15.** *Id.* at 746, 107 S.Ct. at 2101.

**16.** *Id.* at 747 n. 4, S.Ct. at 2101 n. 4.

**17.** 18 U.S.C. § 3161, *et seq.*

**18.** 481 U.S. at 747, 107 S.Ct. at 2101.

**19.** 18 U.S.C. § 3161(h)(8)(A).

the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." [20]

The mere application of this well-established exception to the Speedy Trial Act to one detained under the Bail Reform Act is not *per se* a denial of due process. In seeking to achieve the "legitimate regulatory goal" of preventing danger to the community, Congress was specifically concerned about the threat to the safety of the community posed by defendants charged with serious narcotics cases.[21] Thus the application of the complex-trial exception to the Speedy Trial Act does not by itself change the regulatory nature of pretrial detention.

■ Like other circuits, we find that the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis,[22] for the clause establishes no specific limit on the length of pretrial confinement.[23] In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.[24]

In rejecting Hare's due-process challenge, the magistrate failed to consider several of these factors, most importantly the length of Hare's detention, which was more than four months at the time of the ruling and is now more than ten months. We therefore remand for a hearing on whether Hare's continued detention violates due process. In considering the facts concerning risk of flight and dangerousness, Hare may present to the court any condition he is willing to abide by if he is released, such as daily reporting to an appropriate government official.[25] Without commenting on the merits of any such contention, we also note that Hare has not sought severance of his trial or an immediate trial under the Speedy Trial Act and we express no opinion concerning any claim that might be made under the Sixth Amendment guarantee of a speedy trial.

## IV.

The order of the district court is AFFIRMED, in part, REVERSED in part, and REMANDED.

---

**20.** 18 U.S.C. § 3161(h)(8)(B)(ii).

**21.** *See, supra* n. 9 and accompanying text; *Salerno,* 481 U.S. at 748, 107 S.Ct. at 2102.

**22.** *United States v. Gelfuso,* 838 F.2d 358 (9th Cir.1988).

**23.** *United States v. Melendez–Carrion,* 820 F.2d 56, 59 (2nd Cir.1987); *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir.1986).

**24.** *See United States v. Ojeda Rios,* 846 F.2d 167, 169 (2nd Cir.1988) (listing similar factors); *Gelfuso,* 838 F.2d at 359 (same); *United States v. Zannino,* 798 F.2d 544, 547 (1st Cir.1986) (same); *Accetturo,* 783 F.2d at 388 (same); *United States v. Theron,* 782 F.2d 1510, 1516 (10th Cir.1986) (delays caused by defendant do not implicate due process).

**25.** *See* 18 U.S.C. § 3142(c)(2).