**UNITED STATES of America**

v.

**Lee A. CHAGRA, Jr.**

**Crim. No. 94–36.**

United States District Court,
W.D. Pennsylvania.

April 11, 1994.

---

Margaret E. Picking, Asst. U.S. Atty., Pittsburgh, PA, for plaintiff.

Richard Esper, Joseph Abraham, El Paso, TX, for defendant.

## OPINION

DIAMOND, District Judge.

Pursuant to 18 U.S.C. § 3145(a)(1), the United States filed a motion with this court seeking revocation of a release order issued by a United States Magistrate Judge. The motion will be granted, detention will be ordered, and the following includes the court's findings of fact and statement of the reasons for detention as required by 18 U.S.C. § 3142(i).

### I.

Defendant Lee A. Chagra, Jr. was arrested in El Paso, Texas on March 16, 1994. The arrest was made after a federal grand jury in this district returned an indictment charging defendant with conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine and in excess of 100 kilograms of marihuana, in violation of 21 U.S.C. § 846. The details of the alleged conspiracy will be fleshed out below, but generally it is asserted that defendant and others shipped between 100 and 150 kilograms of cocaine and approximately 1,000 pounds of marihuana from El Paso, Texas to Pittsburgh, Pennsylvania between 1990 and February 1993.

After defendant's arrest, the government moved for detention of the defendant before trial. A detention hearing was held before United States Magistrate Judge Philip T. Cole of the United States District Court for the Western District of Texas on March 22, 1994. The magistrate judge denied the government's motion the following day, ordering that defendant be released after filing a cor-

porate surety appearance bond in the amount of $100,000.00 and subject to certain conditions of release.[1] On the same day, March 23, 1994, the government filed its motion for review with this court, as the court having original jurisdiction over the offense, and the court granted the government's motion to stay the release order. Defendant was expeditiously transported to this district and a hearing was held on the motion on April 7, 1994.

## II.

Section 3145 of Title 18, United States Code, provides in pertinent part:

(a) Review of a Release Order—If a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—

(1) the attorney for the government may file with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release....

. . . . .

The motion shall be determined promptly.

The Third Circuit has construed § 3145(a)(1) to confer broad discretion with the court of original jurisdiction to reexamine *de novo* all aspects of a release order. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir.1985).[2]

■ The availability of pretrial release for a defendant is controlled by the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. §§ 3141–3150. Pursuant to statute, a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or

the community." § 3142(b). Thus, the question is whether defendant presents *either* an unacceptable risk of flight *or* a danger to others. *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir.1986). If, following a hearing, the judicial officer finds that no condition or combination of conditions of release will reasonably assure defendant's appearance and the safety of any other person in the community, detention should be ordered. § 3142(e). The purpose of the detention hearing is to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community. § 3142(f). In making that determination, the judicial officer must take into account the available information concerning:

(1) the nature and circumstance of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and the characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law; and

(4) the nature and seriousness of the danger to any person or the community

---

1. The release was conditioned on, *inter alia*, defendant remaining in El Paso County, Texas, except to travel to and from Pittsburgh as required for court appearances, and defendant residing with his uncle, Edward Abraham, who would sign as the defendant's custodian and agree to supervise his compliance with all conditions of release.

2. Defendant argues that this court's review falls in an intermediate level of review between an abuse of discretion standard and *de novo* review requiring some deference to the magistrate judge's decision. This position was considered and rejected in *Delker*, 757 F.2d at 1394. *Accord United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990).

that would be posed by the person's release.

18 U.S.C. § 3142(g).

■ Under the BRA, a rebuttable presumption against pretrial release arises when the defendant is charged with an offense proscribed in the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. The presumption which arises is that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). This presumption arises if there is probable cause to believe that the defendant actually committed the offense with which he is charged. 18 U.S.C. § 3142(e); *United States v. Suppa,* 799 F.2d 115, 118 (3d Cir.1986). In this circuit, an indictment charging the defendant with committing a crime proscribed by the Controlled Substances Act which carries a maximum penalty of ten years or more is sufficient to support a finding of probable cause. *Suppa,* 799 F.2d at 119.

The indictment in the instant case charges defendant with violating 21 U.S.C. § 846 by participating in a conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine and in excess of 100 kilograms of marihuana. Section 846 refers to the substantive offenses in § 841 for the applicable penalties. For a conspiracy involving in excess of five kilograms of cocaine, defendant is exposed to a term of imprisonment of not less than 10 years and not more than life. 21 U.S.C. § 841(b)(1)(A). For a conspiracy involving in excess of 100 kilograms of marihuana, defendant is exposed to a term of imprisonment of not less than 5 years and not more than 40 years. 21 U.S.C. § 841(b)(1)(B). Because defendant has a prior conviction relating to cocaine, the penalties above are doubled. §§ 841(b)(1)(A) and (B). Accordingly, a presumption arises that no condition or combination of conditions of release will assure defendant's presence at trial and the safety of the community.

■ Defendant may rebut this presumption by producing "some credible evidence that he will appear and will not pose a threat to the community." *United States v. Car-*

*bone,* 793 F.2d 559, 560 (3d Cir.1986). The defendant's burden of production is relatively light and has been construed as easy to meet. *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986) (recognizing difficulties faced by defendants). If the defendant rebuts the presumption, the burden of persuasion remains with the government. *United States v. Alatishe,* 768 F.2d 364, 371 (D.C.Cir.1985). The government must prove that the defendant is a danger to the safety of any other person and the community by clear and convincing evidence. *Delker,* 757 F.2d at 1399 (*citing* 18 U.S.C. § 3142(f)). The government must prove that the defendant poses a risk of flight by a preponderance of the evidence. *United States v. Portes,* 786 F.2d 758, 765 (7th Cir.1985).

### III.

At the hearing on the government's motion, the court incorporated the transcript of the proceedings before Magistrate Judge Cole, including the exhibits admitted therein. *See Dominguez,* 783 F.2d at 706 n. 6 (approving incorporation of record of hearing before magistrate judge); *Delker,* 757 F.2d at 1395 n. 3 (stating that it is preferable to have transcript). The court also heard extensive testimony from witnesses for both sides and entertained the arguments of counsel.

The government relied solely on the testimony of Drug Enforcement Administration ("DEA") Special Agent John Guseman. Guseman's testimony was based largely on information related to him by approximately eight confidential informants ("CIs") and cooperating witnesses ("CWs"). Guseman testified that approximately 100 to 150 kilograms of cocaine and 1,000 pounds of marihuana were shipped from El Paso, Texas to Pittsburgh, Pennsylvania during the course of the conspiracy. Agent Guseman also testified that the DEA has attempted to corroborate the information obtained through the CIs and CWs and has verified many of the details of the drug transactions but has not independently linked Chagra to the conspiracy.

Defendant presented the testimony of Raul Alvarado, a federal probation officer respon-

sible for defendant's supervision pursuant to a sentence of probation for a 1986 drug charge. Defendant also presented the testimony of his uncle, Edward Abraham, and an attorney, Raymond Caballero. Defendant also introduced numerous exhibits, including character letters.

After reviewing the transcript of the hearing before Magistrate Judge Cole and considering the testimony presented to this court, as well as all of the exhibits and the arguments of counsel, the court concludes that there is no condition or combination of conditions which will reasonably assure the appearance of the defendant as required or the safety of other persons and the community.

## A. Danger to the Community

 In order for a defendant to rebut the presumption that he presents a danger to the community, he must come forward with some credible evidence that he will not continue to engage in the drug activities with which he has been charged. *See United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *United States v. King*, 849 F.2d 485, 488 (11th Cir.1988). The Third Circuit has stated that a defendant may rebut the presumption through " 'testimony by co-workers, neighbors, family, physician, friends, or associates concerning the arrestee's character, health or family situation.' " *Suppa*, 799 F.2d at 120 (*quoting United States v. Perry*, 788 F.2d 100, 115 (3d Cir.), *cert. denied*, 479 U.S. 864, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986)). In the present case, considering the relatively light burden of production, the defendant's evidence was sufficient to rebut the presumption of dangerousness. Specifically, the defendant's uncle testified to defendant's responsibility and moral integrity and numerous letters were received into evidence from friends and family commending his generosity, integrity, and reliability.

 Nonetheless, the government has shown by clear and convincing evidence that defendant's release would present a continuing danger to the safety of the community. Once the presumption has been rebutted, it does not disappear from the case. Rather, "it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Dominguez*, 783 F.2d at 707. In amending the BRA to include the rebuttable presumption, Congress found:

> It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203. In combination with this congressional finding, other evidence that defendant is likely to continue illegal narcotics activity is overwhelming.

First and foremost, defendant has a prior federal conviction from 1986 for possession with intent to distribute cocaine. He served a sentence of six months confinement and nearly five years probation. Thus, when the finding of probable cause embodied in the present indictment is considered, defendant has demonstrated that he poses a high risk of recidivism. Second, the breadth of the conspiracy alleged must be considered. The court recognizes that "the evidence of [the defendant's] guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community." *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir.1986). There is strong evidence, however, that defendant was not only involved in, but was a significant player in a large scale drug distribution scheme.[3] When

---

**3.** Defendant argues that the evidence against him is not strong because it relies primarily on CIs and CWs who are easily impeached. However, the testimony of eight or more such witnesses whose testimony is consistent with one another can be very strong. Although Agent Guseman's testimony regarding the information received from the CIs and CWs was hearsay, it is properly considered for present purposes because the rules concerning admissibility of evidence in criminal trials do not apply to detention hear-

combined with defendant's prior conviction and the congressional findings, the significant quantities of drugs and lengthy duration of the conspiracy intimate that defendant is likely to continue illegal activities if released. *Portes,* 786 F.2d at 765. Based on the foregoing, the court finds that the evidence is clear and convincing that there is no condition or combination of conditions which will ensure the safety of other individuals or the community.

## B. *Risk of Flight*

 Defendant also has rebutted the presumption that he presents a risk of flight. Defendant offered the testimony of Alvarado, his probation officer while he was under supervision for the 1986 cocaine conviction. Alvarado testified that Chagra had reported to pretrial services as required while he was released on bond pending trial. Alvarado also testified that Chagra diligently complied with the requirements of his probation supervision resulting from his sentence in that case, including appearing as required for drug testing and other conferences. Defendant never tested positive for drugs during his probation. Defendant also offered records confirming that he had reported as required at all times while under court obligation on the cocaine charge.

In addition, defendant offered the testimony of Edward Abraham, his uncle. Abraham testified that he had been supporting defendant for a number of years by providing him with money for rent, tuition and living expenses. According to Abraham, defendant is a widower and is a full-time student at the University of Texas, El Paso ("UTEP") with a B average. Abraham also testified that neither he nor the defendant has any family in Mexico. Finally, Abraham testified that he had a net worth in excess of $200,000 and was willing to sign as surety on a bond in that amount. Abraham testified that his net worth was not such that he could afford to suffer a $200,000 loss and agreed to act as surety only because of his faith that Chagra would appear for trial. In addition, Abraham testified that he would be willing to act

as a custodian for defendant as a condition of defendant's bond.

 Once again, however, the entire record fails to provide sufficient assurance that defendant will appear as required. Although the record shows that defendant diligently reported for court during the pendency of his 1986 cocaine case, it is significant that the penalties he faces in the present case are far more severe. Defendant is thirty years old and is exposed to a minimum of twenty years imprisonment and perhaps more. For his 1986 conviction, defendant served six months imprisonment and five years probation. The evidence that defendant has strong family ties to El Paso and the character evidence discussed above must be discounted. Defendant has no steady employment, no dependents, and no permanent home there. Although he receives some income from a family trust, the evidence as to the extent of that income is contradictory. The defendant's enrollment at UTEP does little to convince the court that he does not pose a risk of flight. Defendant's family and friends, despite their character attestations, appear uninformed about the source of his income, his travels, his gambling activities and other important details which weigh against him. Mr. Abraham's agreement that he will act as custodian for defendant pending trial are unpersuasive. Although he appears sincere, the court is not persuaded that Abraham can assure defendant's appearance at trial. *See United States v. Carlos,* 777 F.Supp. 858, 861 (D.Kan.1991) (mother's testimony that she would be her son's "personal jailor" insufficient).

In addition, there is evidence that defendant has engaged in extensive evasive activity. According to CIs and CWs, defendant has used a number of fictitious names and has at least two driver's licenses. Agent Guseman testified that he has information from a CI that each time defendant made a shipment of drugs to Pittsburgh, he would cross the border from El Paso into Mexico where he would await notification by pager that the shipment had been received without incident. There also is evidence that defendant has contacts in Mexico related to his

ings. 18 U.S.C. § 3142(f); *Portes,* 786 F.2d at 764.

illegal drug activities. Congress explained the significance of these facts when it enacted the BRA:

> [T]he Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3203; see also Sazenski, 806 F.2d at 847.

Based on the foregoing, the court concludes that a preponderance of the evidence indicates defendant presents a high risk of flight.[4] The magistrate judge in El Paso believed that a $100,000.00 appearance bond and the condition that Abraham act as his custodian would be sufficient to assure the defendant's appearance. In light of the large sums of cash which appear to have been involved in the conspiracy, this court is not satisfied that any sum would deter the defendant from flight. The court recognizes that it must consider all possible conditions of release. *United States v. Jackson*, 823 F.2d 4, 6 (2d Cir.1987). Electronic monitoring and other means of personal supervision are insufficient, however, because they only notify authorities that the defendant is already fleeing. *United States v. Levine*, 770 F.Supp. 460, 468 (N.D.Ind.1991). Thus, there is no condition or combination of conditions which will reasonably assure defendant's appearance for proceedings related to the indictment.

## IV.

In sum, the court has reviewed the record and considered alternative conditions of release. The court concludes that clear and convincing evidence demonstrates that if released under any conditions defendant will present a danger to the community. The court also finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure defendant's appearance as required. Accordingly, defendant will be ordered detained pending trial.

An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 21st day of April, 1994, IT IS ORDERED that this court's order of April 11, 1994, IS HEREBY AMENDED to provide as follows:

For the reasons stated in the opinion filed April 11, 1994, IT IS ORDERED that the government's motion seeking revocation of a release order issued by a United States Magistrate Judge (Document No. 6) be, and the same hereby is, granted and defendant's bond is revoked;

IT IS FURTHER ORDERED that defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

IT IS FURTHER ORDERED that defendant be afforded reasonable opportunity for private consultation with counsel; and,

IT IS FURTHER ORDERED that, on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which defendant is confined deliver defendant to a United States marshal for the

---

4. The court has employed the preponderance of the evidence standard to the question of whether defendant's appearance for trial can be reasonably assured. Although no Third Circuit precedent seems to distinguish the burdens of proof required for the risk of flight and dangerousness prongs of the detention inquiry, the distinction adopted here is in keeping with that used by the majority of circuits which have addressed the issue. *See Portes*, 786 F.2d at 765 (citing cases). In any event, even if a higher standard is required, the court finds the evidence that no condition or combination of conditions will assure defendant's appearance clear and convincing.

purpose of an appearance in connection with a court proceeding.