UNITED STATES of America, Plaintiff,

v.

Grace Melsina ALLEN and Andrea Francis, Defendants.

No. 95–10–Cr.

United States District Court, S.D. Florida, Miami Division.

June 16, 1995.

Allyson Fritz, Asst. U.S. Atty., U.S. Attys. Office, Miami, FL, for plaintiff.

John Bergendahl, Eric M. Cohen, Miami, FL, for defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon (1) the Government's appeal from United States Magistrate Judge Palermo's March 10, 1995 Oral Order denying pretrial detention for Defendant Allen, and (2) Defendant Francis's appeal from Magistrate Judge Palermo's Oral Order of March 10, 1995 and written Order of March 29, 1995 remanding Defendant Francis to pretrial detention. The Magistrate Judge released Defendant Allen because he found that the Government failed to establish by a preponderance of the evidence that she was a flight risk. Since Defendant Allen was released on bond,[1] this Court infers that the Magistrate Judge concluded that Allen did not pose a danger to the community.[2] The Government appeals this decision and seeks pretrial detention arguing that Defendant Allen is both a flight risk and a danger to the community.

The Magistrate Judge remanded Defendant Francis to custody because he found that she posed both a risk of flight and a danger to the community. Defendant Francis argues that she is not a flight risk because as of March, 1994, she knew that she was a potential target of the Federal Bureau of Investigation yet she made no attempt to flee the jurisdiction, and because she has substantial ties to the community. Defendant Francis contends that she is not a danger to the community because she has not personally perpetrated any acts of violence, but has merely been a witness to them.

## I. FACTUAL BACKGROUND

Defendants Allen and Francis have each been indicted on one count of conspiracy to

---

1. Magistrate Judge Palermo imposed a $50,000 corporate surety bond with a *Nebbia* hearing, and required Defendant Allen to report to Pretrial Services three times a week, at least once in person. He also required that Allen turn over all her travel documents.

2. The Magistrate Judge did not expressly address the issue of whether Defendant Allen posed a danger to the community.

distribute crack cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The conspiracy for which Defendants have been indicted is alleged to have started in January, 1989 and to have continued through until August, 1992.[3] The minimum penalty for violation of this statute is ten years incarceration under the Controlled Substances Act. 21 U.S.C. § 841(b)(1)(A) (1984). The maximum term of possible imprisonment is life. *Id.*

The evidence in the record[4] suggests that Defendants Allen and Francis, who are sisters, are members of a group known as the Youngblood Posse. All members of Defendants' immediate family belong to, and were active in, the Youngblood Posse.[5] Within this organization, Defendants Allen and Francis were "Hustlers".[6] Youngblood Hustlers were responsible for the conversion of cocaine into crack, and the sale and distribution of the crack cocaine. In the typical scenario, Defendants brought cocaine from Dade or Broward County, Florida to Pensacola, Florida for distribution in the Escambia Arms Housing Project. Defendants, along with their mother, transported the cocaine to Pensacola after it was cooked into crack. They rented the hotel rooms and the rental cars, and served as couriers for the money and drugs between the hotel room and the Escambia Arms. Defendants and other members of the Youngbloods then arranged for the money to be sent to South Florida by wire or physical transportation.

Both Defendants have been present, though there is no evidence that they have personally participated in, acts of extreme violence committed by other members of the Youngblood Posse. In 1989, both Defendants were present when a man was kidnapped and subsequently tortured[7] for being involved in the theft of $80,000 worth of drugs from the Youngbloods. Within a week or two of that incident, both Defendants were present at Defendant Francis's house for Thanksgiving when a double homicide occurred on Defendant Francis's front lawn. It is believed that the two individuals were murdered by the Youngbloods to prevent any retaliatory violence by associates of the torture victim.

When law enforcement personnel investigated the scene, they found seventy (70) rounds of spent ammunition originating from at least six different weapons. No guns were recovered from the scene. When questioned, none of Defendant Francis's twenty (20) guests, including Defendant Allen and other family members, knew anything about the incident. A video tape recovered from the residence confirms that both Defendants were present that Thanksgiving, and includes taped shots of weapons of a type which correspond with the expended ammunition. As yet, it is unclear which guests personally participated in the shooting. One guest, however, immediately returned to Jamaica with the help of the Youngbloods. There is no evidence that either of the Defendants personally wielded weapons.

3. The Government asserts that the delay in prosecution of this offense was due to lack of evidence. Recently, however, certain members of the Youngblood Posse have agreed to cooperate with the Government. This new evidence provided the basis for the indictment of Defendants.

4. The evidence consists of the Government's proffer, Federal Bureau of Investigation Special Agent Greg Carl's testimony, and the Defendants' responses at the March 10, 1995 Pretrial Detention Hearing before United States Magistrate Judge Peter R. Palermo.

5. Defendants' mother, since deceased, participated in the Youngblood drug trafficking activities. Defendants' two brothers were founding members of the Youngblood Posse; one is in pretrial detention as an indicted co-Defendant in this case; the other was detained in Dade County Jail at the time of the pretrial detention hearing on charges relating to Youngblood activity. Neither Defendant seems to have any contact with her father.

6. There is also an enforcement sub-group within the Youngbloods which is known as the "Gangsters". Although the Government asserts that the Defendants were Hustlers, not Gangsters, the Government asserts that the Defendants were aware of the actions of the Gangsters, and necessarily relied on the strong-arm tactics of the Gangsters for their safety and the profitability of the Youngbloods as a group.

7. Electrodes were strapped to the victim's genitals through which an electric current was sent repeatedly.

Sometime in 1991, there was an incident in which police personnel chased several vehicles to Defendant Allen's home. In the process of running into Allen's home, the occupants of the vehicles, later identified as members of the Youngblood Posse, dropped four guns in the front yard: two Uzis, one 9–mm and one MAC–10. When police personnel finally gained entry into the home, they observed paraphernalia in the kitchen commonly used to cook cocaine into crack. The police also located empty "nickel" and "dime" bags on the premises. There is no evidence that Defendant Allen was in the house at that time.

When Defendant Allen was arrested on March 7, 1995, two guns were removed from her residence: one semiautomatic pistol with the serial number scratched out, and one revolver. Defendant Allen shared her residence with her sons. No narcotics were recovered from the residence.

Defendant Francis was arrested on March 6, 1995. At the time of her arrest, Defendant Francis stated that if she and her sister knew that they were wanted by law enforcement or that they were indicted, they would have left the jurisdiction.

Both Defendants are Jamaican nationals legally living in the United States. Both Defendants' children are in the United States. Both Defendants were unemployed at the time of their arrest. Prior to the recent birth of her baby, Defendant Allen had run a nail salon out of her home. Defendant Allen has lived in her West Palm Beach home for three years with her six children. Allen does not have title in the home, and the bills for the utilities are not in her name. The father of Allen's newborn was living in the home at the time of Allen's arrest. He is in this country illegally and wishes to return to Jamaica.

The week of her arrest, Defendant Francis had begun vocational school. Prior to her mother's death, Defendant Francis had lived with her mother. At the time of her arrest, Defendant Francis did not have a specific address and she was keeping her personal belongings in storage. Defendant Francis has no property or assets in the United States.

## II. DISCUSSION

■ Review of the magistrate judge's decision is *de novo*. *United States v. King,* 849 F.2d 485, 489–91 (11th Cir.1988). The Bail Reform Act of 1984 provides that a judicial officer shall order pretrial detention of a defendant if no conditions on the defendant's release will reasonably assure the appearance of the defendant in subsequent judicial proceedings or the safety of the community. 18 U.S.C. § 3142(e) (1986). Where a defendant is indicted for an offense for which a minimum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.,* a rebuttable presumption arises that the defendant poses both a risk of flight and a danger to the community. 18 U.S.C. § 3142(e); *United States v. Quartermaine,* 913 F.2d 910, 916 (11th Cir.1990). A violation of 21 U.S.C. § 846 carries with it a mandatory minimum of ten years incarceration. Therefore, the Government is entitled to the rebuttable presumption that pretrial detention is required for both Defendants.

■ This presumption imposes on a defendant the burden of production to come forward with evidence suggesting that she is neither a danger to the community nor a risk of flight. *King,* 849 F.2d at 488. This obligation, however, does not shift to a defendant the Government's burden of persuasion. *Quartermaine,* 913 F.2d at 916. If a defendant produces evidence which rebuts the presumption, the Government must establish that the defendant is a danger to the community by clear and convincing evidence, or must establish that the defendant is a flight risk by a preponderance of the evidence. *King,* 849 F.2d at 488–89. The Government need demonstrate only one or the other to justify detaining the defendant pending trial. *Id.* at 488. The presumption initially accorded to the Government does not disappear but "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relative to the factors listed in section 3142(g)." *Id.* (internal quotation omitted).

Section 3142(g) of Title 18 of the United States Code sets forth those elements which the court must consider when addressing the issues of a defendant's dangerousness and risk of flight:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g) (1986).

### A. Defendant Allen

■ The Government asserts that the Magistrate Judge erred in permitting Defendant Allen to be released on bond. This Court agrees.

Defendant Allen has been indicted on a charge of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. Since violation of this statute carries a minimum prison term of more than ten (10) years, there is a presumption that there are no bond conditions that can adequately assure the safety of the community or the subsequent appearance in court of Defendant Allen. Defendant Allen has failed to produce evidence which rebuts the presumption that she poses a flight risk and a danger to the community.

### 1. Risk of flight analysis

Allen, although a Jamaican national, has legally resided in the United States for twenty years. Her six children live with her in the United States. She is the mother of a young infant. However, the father of Defendant Allen's newborn is a Jamaican national who is illegally in this country, and subject to deportation. Moreover, he wants to go home. In addition, Defendant Allen does not own her house, none of the bills are in her name, and she is presently unemployed. Her familial ties to the community are minimal. Except for her children, all members of Allen's immediate family are presently in jail.

If convicted, Allen will serve a minimum ten (10) year sentence.[8] The lengthy sentence presumptively provides Allen with a strong incentive to flee. There is evidence that the Youngblood Posse has previously exercised its ability to facilitate the return of persons to Jamaica. Furthermore, the evidence against Defendant Allen is strong. Defendant Francis has made two prior statements to members of the Federal Bureau of Investigations ("FBI") inculpating herself and Defendant Allen in various Youngblood activities. In addition, the Government has gained the cooperation of several individuals who were previously associated with the Youngbloods, and who have specific knowledge of Allen's involvement in the Youngblood Posse's activities. The testimony provided by the cooperating witnesses has, in many instances, been objectively verified by credit card receipts, hotel registries and the like. The Government has demonstrated by a preponderance of the evidence that Defendant Allen is a flight risk.

### 2. Danger to the community analysis[9]

■ There is no evidence that Allen ever personally injured another individual, nor di-

---

**8.** According to the Government's present calculations, if convicted and sentenced at the low end of the United States Sentencing Guidelines, Defendant Allen would be sentenced to just over 19 years imprisonment.

**9.** The Government need only demonstrate that a defendant is *either* a flight risk *or* a danger to the community. *King*, 849 F.2d at 488. For the sake of thoroughness, the Court proceeds with the second prong of the analysis.

rected another to do so. Defendant Allen has never been observed with a firearm in her possession. When she was arrested, however, there were two weapons located in her residence. In addition, there is evidence that Defendant Allen was present during incidents of extreme violence being committed at the hands of Youngblood Posse members, and possibly at the hands of one of her brothers. Indeed, the Youngblood Posse relied on the activities of their "Gangsters" to keep them safe and financially sound. Furthermore, an indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community. *United States v. Viera*, 814 F.Supp. 81, 83 (S.D.Fla. 1993); *United States v. Knight*, 636 F.Supp. 1462, 1466 (S.D.Fla.1986). The Government has demonstrated by clear and convincing evidence that Defendant Allen is a danger to the community.

### B. Defendant Francis

■ Defendant Francis appeals from the Magistrate Judge's Order remanding her to pretrial detention. In his March 29, 1995 written Order, Magistrate Judge Palermo concluded that Defendant Francis poses a flight risk and a danger to the community. The Court agrees with the ruling entered by the Magistrate Judge.

Much of the analysis relevant to the discussion of Defendant Allen pertains to Defendant Francis as well. Defendant Francis has been indicted for conspiracy to distribute crack cocaine. The indictment provides the presumption that Francis is a flight risk and a danger to the community. 18 U.S.C. § 3142(e); *Quartermaine*, 913 F.2d at 916; *Viera*, 814 F.Supp. at 83. Francis has failed to rebut either presumption.

### 1. Risk of flight analysis

Francis argues that Magistrate Judge Palermo's conclusion that she poses a flight risk fails to take into account three factors: (1) that she has three children, aged 16, 17 and 18, who live with her in Dade County, (2) that she had begun vocational school during the week that she was arrested, and (3) that she did not flee the jurisdiction even though she knew, since March of 1994, that she was a potential target in an FBI investigation. Defendant Francis's third argument is undermined by the facts in this case. When Defendant Francis was arrested on March 6, 1995, she told the FBI agent interviewing her that had she known that she was likely to be arrested, she would have fled the jurisdiction. She had no permanent home as of the date of her arrest, and her belongings were being kept in storage. She has no assets in the United States. The existence of three almost adult children and a couple of days of vocational school do not demonstrate ties to the community that rebut the flight risk presumption. The Government has demonstrated by a preponderance of the evidence that Defendant Francis is a flight risk.

### 2. Danger to the community analysis

Defendant Francis argues that Magistrate Judge Palermo erred in concluding that she poses a danger to the community. Francis argues that such a finding "would be tantamount to 'guilt by association'". (Def. Francis Notice of Appeal ¶ 4.) Defendant Francis fails to perceive the difference between a final adjudication of guilt and a finding that a defendant poses a danger to the community such that she should be incarcerated pending trial. As is the case with Defendant Allen, Defendant Francis has been indicted for a drug trafficking crime. Such an indictment is strong evidence that the community is at risk. *Viera*, 814 F.Supp. at 83; *Knight*, 636 F.Supp. at 1466. Furthermore, Defendant Francis was witness on several occasions to acts of heinous violence, though there is no evidence that she perpetrated any of the violent acts. The nature of the Youngblood organization is such that violence must be pervasive; two people were shot dead on Defendant Francis's front lawn on Thanksgiving Day in 1989.

The case against Defendant Francis is even stronger than that against Defendant Allen. On two separate occasions, Francis has given statements to the FBI inculpating herself, as well as others, in Youngblood activity. The Thanksgiving Day videotape shows that weapons were present in her house. The same objective evidence being used to corroborate the cooperating wit-

nesses' testimony against Defendant Allen corroborates their testimony as against Francis. It is true that there is no evidence that Defendant Francis ever injured another, or directed someone to injure another. However, this cannot, by itself, rebut the presumption. The Government has proven by clear and convincing evidence that Defendant Francis is a danger to the community.

### III. CONCLUSION

Accordingly, for the reasons set forth above, this Court hereby

(1) VACATES the Magistrate Judge's March 10, 1995 Oral Order denying the Government's request for pretrial detention of Defendant Allen and GRANTS the Government's request for pretrial detention of Defendant Allen; and

(2) DENIES Defendant Francis's Appeal from the Detention Order entered by the Magistrate Judge on March 29, 1995 and AFFIRMS the March 29, 1995 Detention Order.

It is, therefore,

FURTHER ORDERED AND ADJUDGED that the Defendants continue to be committed to the custody of the Attorney General for confinement. The Defendants shall be afforded reasonable opportunity for private consultation with counsel. Upon order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility in which the Defendants are confined shall deliver either or both of the Defendants to a United States Marshal for the purpose of an appearance in connection with a court proceeding. 18 U.S.C. § 3142(i).

DONE AND ORDERED.