ORDER REQUIRING PRETRIAL DETENTION
 

 HIGHSMITH, District Judge.
 

 THIS CAUSE is before the Court upon the United States’ appeal of United States Magistrate Judge William C. Turnoff’s March 5, 2000 order modifying the conditions of Defendant Javier Rivera’s bond. For the reasons set forth below, the Court finds that pretrial detention is mandated in this case. Accordingly, Magistrate Judge Turnoff’s prior orders setting the conditions of Rivera’s bond are vacated and Rivera is ordered detained pending the trial of this matter.
 

 I. STANDARD OF REVIEW
 

 The United States has appealed Magistrate Judge Turnoffs March 5, 2000 order pursuant to Rule 4(a)(2) of Southern District of Florida’s Magistrate Judge Rules, which provides the procedure for appealing a release order under 18 U.S.C. § 3145. In
 
 United States v. Hurtado,
 
 779 F.2d 1467 (11th Cir.1985), the Eleventh
 
 *1340
 
 Circuit clarified the standards to be applied in reviewing detention decisions under the Bail Reform Act of 1984 (hereinafter the “Bah Reform Act”), 18 U.S.C. § 3141 et seq.
 
 See also United States v. King,
 
 849 F.2d 485 (11th Cir.1988). The Eleventh Circuit explained that there are two types of findings that may require review, and that different standards of review apply to the different types of findings.
 
 See Hurtado,
 
 779 F.2d at 1471-72. The court first reasoned that the decision whether or not to grant pretrial release is a mixed question of fact and law, which is subject to plenary de novo review.
 
 See id.
 
 at 1471;
 
 see also United States v. Knight,
 
 636 F.Supp. 1462, 1464 (S.D.Fla.1986) (noting district court’s power, as the court of “original jurisdiction,” to conduct plenary review of magistrate judge’s decision to grant or deny pretrial release). This review covers all aspects of the release order.
 
 See United States v. Chagra,
 
 850 F.Supp. 354, 356 (W.D.Pa.1994);
 
 United States v. Knight,
 
 636 F.Supp. at 1464. The Eleventh Circuit also recognized that an appeal of a detention decision may call for the court to pass upon a “purely factual finding.”
 
 See Hurtado,
 
 779 F.2d at 1472. When presented with a purely factual finding, the reviewing court should not disturb the factual finding, unless it is clearly erroneous.
 
 See id.
 
 Thus, the Court will review anew Magistrate Judge Turnoffs decision to grant pretrial release and the conditions imposed to guarantee Rivera’s appearance at trial, but it will set aside his factual findings only if they are clearly contradicted by the record.
 

 II. BACKGROUND
 

 A. The Underlying Charges
 

 This criminal prosecution arises out of a reverse sting operation conducted by law enforcement agents, with the assistance of a cooperating source. The cooperating source arranged for Rivera and his co-Defendant Ronald Cruz to purchase five kilograms of cocaine on July 1, 1999, for $16,000.00 per kilogram. On that day, Rivera and Cruz, who both reside in Orlando, Florida, traveled with the cooperating source to a warehouse in Fort Lauder-dale, Florida. At the warehouse, Rivera and Cruz were introduced to two undercover' agents, and the controlled sale ensued. One of the undercover agents initially requested to see the money. Rivera then brought him to the trunk of the car, opened the trunk, and presented a black briefcase, containing $80,000.00 and a .40 caliber semi-automatic pistol. The men then entered the warehouse, and one of the undercover agents retrieved the cocaine. After Rivera inspected the cocaine, the cash for drugs exchange took place. Upon exiting the warehouse, Rivera and Cruz were arrested. On July 27, 1999, Rivera and Cruz were indicted for: (1) conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846; (2) possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (3) knowingly carrying and using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(2).
 

 B. Procedural History of Rivera’s Detention Proceedings
 

 On August 10, 1999, Rivera had his initial appearance before United States Magistrate Judge Barry S. Seltzer, at which he requested a pretrial detention hearing. Rivera’s pretrial detention hearing was held on August 23,1999, before Magistrate Judge Turnoff. At that hearing, the assistant United States attorney set forth the facts of the controlled sale of cocaine, and then specifically invoked the Bail Reform Act’s presumption of a risk of flight and danger to the community in drug cases involving a maximum sentence of over ten years. Magistrate Judge Turnoff requested additional information concerning Rivera’s risk of flight and danger to the community, and the assistant United States attorney noted that at the time of the controlled sale Rivera was in possession of a gun and explained that there was information that Rivera was a major drug traf
 
 *1341
 
 ficker, allegedly purchasing ten kilograms of cocaine a week. Magistrate Judge Turnoff then heard from Rivera’s counsel. Rivera’s counsel introduced Magistrate Judge Turnoff to approximately a dozen of Rivera’s relatives who had traveled from Orlando to Miami, to attend the hearing. He also asserted that Rivera: (1) was a United States citizen; (2) had been living in Orlando for ten years; (3) had no previous arrests; (4) had his own business; and (5) had several relatives who were willing to pledge property as surety for his release.
 

 After hearing from counsel, Magistrate Judge Turnoff concluded: “For purposes of this bond hearing, it is uncontested that this deal involved a Glock, $80,000.00 in cash, and live kilos [of cocaine].” Magistrate Judge Turnoff then noted that he had applied the factors that he was required to consider under the Bail Reform Act, declined to order detention, and set a $250,000.00 corporate surety bond with a Nebbia
 
 [1]
 
 requirement for Rivera’s release. Additionally, Magistrate Judge Turnoff stated that he would be willing to consider reducing the amount of the bond, if counsel presented additional facts supporting a reduction. Rivera was never able to post the $250,000.00 corporate surety bond, and thus remained in custody.
 

 On September 21, 1999, Rivera moved for a reduction of his bond. His motion was unaccompanied by any supporting evidence, detailing Rivera’s and his family’s financial resources. The motion was summarily denied by Magistrate Judge Turnoff in an order dated September 30, 1999.
 

 On February 25, 2000, Rivera again moved to modify the conditions of his bond. In support of his second motion, Rivera offered financial records, including his tax returns from 1997 and 1998 and a statement of his personal assets and liabilities as of April 30, 1999, prepared by the accounting and tax services firm of P. So-lano
 
 &
 
 Associates. Rivera’s tax returns indicate that he earned approximately $45,000.00 a year in both 1997 and 1998 from his business, and the statement of personal assets and liabilities reveals that he has a net worth of $276,341.00.
 

 On March 2, 2000, Magistrate Judge Turnoff held a hearing on Rivera’s second motion to modify the conditions of his bond. At the hearing, Rivera’s counsel advised Magistrate Judge Turnoff that Rivera’s family had six properties in Orlando and Puerto Rico that they were willing to pledge as surety in support of Rivera’s release, and explained that a bondsman had advised the family that these properties could secure a $150,-000.00 corporate surety bond. Counsel also again introduced several family members who had traveled from Orlando to attend the hearing. Over the objections of the assistant United States attorney, Magistrate Judge Turnoff, ruling from the bench, agreed to modify the conditions of Rivera’s bond.
 
 [2]
 
 In place of the previously ordered $250,000.00 corporate surety bond, Magistrate Turnoff set as the conditions of Rivera’s release: (1) a $100,000.00 corporate surety bond, subject to a
 
 Neb-bia
 
 requirement; (2) a $100,000 ten percent bond, also with a
 
 Nebbia
 
 requirement; and (3) a $500,000.00 personal surety bond. Magistrate Judge Turnoff also required that Rivera’s wife, mother, uncle, aunt, and sister co-sign both the $100,000.00 ten percent bond and the $500,000.00 personal surety bond. The United States immediately appealed the modification of Rivera’s bond. The
 
 Neb-bia
 
 hearing has not been conducted; thus, Rivera has not been released.
 

 III. DISCUSSION
 

 Pretrial detention of a criminal defendant is appropriate when “no condition or combination of conditions will rea
 
 *1342
 
 sonably assure the appearance of the person as required and the safety of any other person and the community.” 18 U.S.C. § 3142(e). In narcotics cases where the defendant faces a maximum of over tens years of imprisonment, such as the instant case, the Bail Reform Act establishes a rebuttable presumption that the defendant is both a flight risk and a threat to the community.
 
 [3]
 

 See id.
 
 “This presumption imposes on a defendant the burden of production to come forward with evidence suggesting that [he] is neither a danger to the community nor a risk of flight.”
 
 United States v. Allen,
 
 891 F.Supp. 594, 597 (S.D.Fla.1995). If the defendant fails to rebut either part of the statutory presumption (i.e., the risk of flight or danger to the community), pretrial detention is warranted.
 
 See United States v. King,
 
 849 F.2d at 488;
 
 United States v. Allen,
 
 891 F.Supp. at 598 n. 9;
 
 United States v. Chagra,
 
 850 F.Supp. at 356. On the other hand, if the defendant rebuts both prongs of the presumption, the burden shifts to the government to establish that the defendant is either a flight risk or a danger to the community.
 
 [4]
 

 Although he made no explicit findings with regard to the risk of flight and danger to the community factors, Magistrate Judge Turnoffs decision to ' grant bond establishes by implication that Rivera rebutted the statutory presumption with regard to both factors. The evidence educed by Rivera to rebut the risk of flight primarily consists of his United States citizenship and his strong ties to the community of Orlando, Florida.
 
 [5]
 
 The only evidence countering the presumption of danger to the community, which the Court can glean from the record, is Rivera’s lack of a prior criminal record. As explained below, this evidence is insufficient to rebut the statutory presumption of a risk of flight and a danger to the community. Thus, the terms of the bond set by Magistrate Judge Turnoff are necessarily insufficient to guarantee Rivera’s future appearance and the safety of the community.
 

 A. Flight Risk
 

 Magistrate Judge Turnoff was obviously impressed by the strong showing of Rivera’s family at both his initial pretrial detention hearing and at the March 2, 2000 modification hearing. As noted above, however, only one member of Rivera’s family, his sister, resides in the Southern District of Florida. The rest of his family resides in either Orlando or Puerto Rico. Rivera himself has resided in Orlando for ten years and owns a successful business there. Clearly, Rivera has strong ties to the Orlando area. Orlando,
 
 *1343
 
 though, Is not located within the Southern District of Florida.
 

 Ties to the community is one of the indicia that courts look to in evaluating the flight risk of a defendant.
 
 See
 
 18 U.S.C. § 3142(g)(3)(A). The relevant community is, of course, the community in which the defendant faces prosecution. In the federal system, courts look to the ties of a defendant to the judicial district in which the criminal charges have been brought.
 
 See United States v. Adipietro,
 
 773 F.Supp. 1270, 1273 (W.D.Mo.1991). Rivera has presented evidence of strong ties to the Middle District of Florida (the judicial district encompassing Orlando); but he has provided no evidence linking him to the Southern District of Florida, aside from the fact the he has a sister who resides in Miami. The evidence of Rivera’s business and family roots in Orlando does not serve to rebut the statutory presumption that he is a flight risk from the Southern District of Florida.
 

 There is little other evidence in the record that could be considered as refuting the risk of flight. Rivera is a United States citizen and has no criminal record, but these facts alone cannot overcome the statutory presumption. Moreover, the United States presented facts that would support a finding of a flight risk, had the statutory presumption been rebutted. Specifically, the evidence against Rivera on the drug charges appears very strong, he faces a lengthy term of imprisonment if convicted, and he has shown that he has access to large amounts of cash. In sum, Rivera failed to rebut the statutory presumption that he is a flight risk and the United States presented evidence, independent of the presumption, sufficient to satisfy its burden of proof as to Rivera’s flight risk.
 

 B. Danger to the Community
 

 At both of the hearings before Magistrate Judge Turnoff and in the written motions for modification of the bond, Rivera’s counsel concentrated his efforts exclusively on demonstrating that Rivera was not a flight risk. Rivera, though, is also charged with the initial burden of coming forward with credible evidence to rebut the presumption of dangerousness.
 
 See United States v. King,
 
 849 F.2d at 488;
 
 United States v. Chagra,
 
 850 F.Supp. at 358. With respect to the issue of dangerousness, the record is absolutely devoid of evidence countering the statutory presumption, aside
 
 from
 
 Rivera’s lack of a prior criminal record. The lack of a prior criminal record, standing alone, is simply not sufficient to rebut the statutory presumption.
 

 The Court also notes that, even in the absence of the statutory presumption, there is strong evidence supporting the United States’ position that Rivera represents a danger to the community. “The Federal Judges of the Southern District of Florida dealing, as they do, with an overwhelming number of serious narcotics cases, fully appreciate the danger associated with the trafficking and importation of narcotics into this community.”
 
 United States v. Viera,
 
 814 F.Supp. 81, 82 (S.D.Fla.1993). Therefore, “an indictment for a drug trafficking offense is [standing alone] strong evidence that the defendant is a risk to the community.”
 
 United States v. Allen,
 
 891 F.Supp. at 599;
 
 see generally Harmelin v. Michigan,
 
 501 U.S. 957, 1003, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring) (“[sjtudies ... demonstrate a direct link between illegal drugs and crimes of violence”). Rivera has been indicted for trafficking in a large quantity of cocaine. Furthermore, when he was arrested, immediately after the drug transaction, Rivera was in possession of a semi-automatic pistol.
 
 See United States v. Harris,
 
 128 F.3d 850, 852 (4th Cir.1997) (noting that “[t]he Sentencing Commission [has] recognized that guns and drugs form a lethal combination that can lead to violence.”). Thus, Rivera constitutes a danger to the community.
 

 IV. CONCLUSION
 

 Under § 3142(e), Rivera is presumed to be a flight risk and a danger to the
 
 *1344
 
 community. In the two hearings before Magistrate Judge Turnoff, and in written submissions, Rivera has failed to educe evidence sufficient to rebut this statutory presumption. Moreover, the record reveals evidence - further supporting the statutory presumption. As Rivera represents both a flight risk and a danger to the community, pretrial detention is warranted. It is therefore ORDERED that Magistrate Judge Turnoffs prior orders setting the conditions of Rivera’s bond are VACATED. Rivera is ORDERED detained pending trial.
 

 [1]
 

 .
 
 United States v. Nebbia,
 
 357 F.2d 303 (2nd Cir.1966).
 

 [2]
 

 . Magistrate Judge Turnoff memorialized the modifications in an order dated March 5, 2000.
 

 [3]
 

 . The presumption arises upon probable cause that the defendant has committed a drug offense carrying a maximum penalty of over ten years imprisonment.
 
 See
 
 18 U.S.C. § 3142(e). In the Eleventh Circuit, probable cause for § 3142(e) purposes is established by the return of an indictment against the defendant, charging him with an offense punishable by more than ten years imprisonment.
 
 See United States v. King,
 
 849 F.2d at 487-88;
 
 Hurtado,
 
 779 F.2d at 1479. In the present case, Rivera has been indicted for conspiracy to possess five kilograms of cocaine with the intent to distribute and possession of five kilograms of cocaine with the intent to distribute. Both of these offenses carry mandatory míni-mums of ten years imprisonment and máxi-mums of life imprisonment.
 
 See 21
 
 U.S.C. § 841 (b)(1 )(A)(ii). Thus, probable cause triggering § 3142(e)’s presumption has been established.
 

 [4]
 

 . The United States is charged with different burdens of proof on the issues of risk of flight and danger to the community. The United States need only prove risk of flight by a preponderance of evidence, while it must prove that a defendant presents a danger to the community by clear and convincing evidence.
 
 See United States v. Quartermaine,
 
 913 F.2d 910, 915-17 (11th Cir.1990).
 

 [5]
 

 . At the March 2, 2000 hearing before Magistrate Judge Turnoff, it was also revealed that Rivera has a sister who lives in Miami. Additionally, he has family ties to Puerto Rico. His strongest ties, however, are clearly in Orlando, where he has lived for ten years, he owns a business, and his closest family members reside.