IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2669

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,

                        versus

MAURICIO RUEBEN and
GERARDO GUERRA,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court for the
                Southern District of Texas
_____

(September 24, 1992)

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     Mauricio Rueben and Gerardo Guerra were indicted for
conspiracy to possess with intent to distribute in excess of 1000
kilograms of marijuana in violation of the Controlled Substances
Act, 21 U.S.C. § 801, et seq.[1] Following a hearing, the magistrate
concluded that no condition or combination of conditions of bond
could reasonably assure the appearance of Rueben or Guerra at trial

_____

     [1]Subsequent to the detention hearings, a superseding
indictment was returned.  Guerra is now charged with four counts
and Rueben is now charged with twenty-two counts.

and that they were a danger to the community.  He therefore ordered that Rueben and Guerra be detained pursuant to 18 U.S.C. § 3142 pending trial.  Rueben and Guerra requested that the district court revoke the detention order, but the district court refused.  Several months later, the district court revoked the detention order and ordered the release of Rueben and Guerra on $100,000 unsecured bond.  The government appeals the district court's order.  We have previously granted the government's application for a stay of the district court's order pending resolution of this appeal.  We now hold that the decision of the district court is not supported by the proceedings below and we therefore reverse and vacate.

I

A

The Bail Reform Act of 1984, 18 U.S.C. § 3142, et seq., provides that upon the motion of a government attorney, a judicial officer must hold a hearing to determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required, and the safety of any other person and the community."  18 U.S.C. § 3142(e).[2]  Rueben and Guerra were indicted under the Controlled Substances Act, 21 U.S.C. § 801, et seq.,

_____

[2]This hearing can be held only if one of the six circumstances listed in § 3142(f)(1) or (2) is present.  United States v. Byrd, No. 92-4602 (5th Cir. August 7, 1992), at 7.  Rueben and Guerra have been indicted for violation of the Controlled Substances Act, 21 U.S.C. § 801, et seq., which is a circumstance listed in § 3142(f)(1)(C).

which triggers a rebuttable presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions will assure their appearance at trial or the safety of the community if they are released.

B

The magistrate conducted a detention hearing for Guerra on May 9, 1991. The government sought pretrial detention of Guerra as both a flight risk and as a danger to the community. The government called a special agent as a witness. Guerra's counsel cross-examined this witness, but did not present any other evidence except that contained in the pretrial services report.

The government's evidence showed that Guerra had been arrested in 1985 and had pled guilty to charges of delivering more than fifty and less than two hundred pounds of marijuana. He was sentenced to ten years imprisonment. After serving six months, he was placed on probation. Evidence relevant to that charge showed that Guerra had negotiated the sale of 300 pounds of marijuana. After undercover agents accompanied Guerra to his residence at 414 Finfrock in Pasadena, he produced 132 pounds of marijuana. A search of his house after his arrest revealed another eleven pounds of marijuana.

The government also presented evidence from a confidential informant that in 1983 Guerra had delivered marijuana to him on at least twenty-five occasions at Guerra's house at 414 Finfrock. According to the government, this information has been verified by

telephone records, utility and property records, and an undercover operation. The government alleges that at this time Guerra was partners with his next door neighbor, Desiderio (Desi) Guerra, who has also been indicted in this case.

Guerra was arrested on March 1, 1989, four months after being released from probation, for delivering 307 pounds of marijuana to a customer in Maryland. Arrested along with Guerra was Raynoldo Perez, another defendant in this case. Perez was later arrested for transporting 280 pounds of marijuana through Jackson, Mississippi; arrested with Perez in that case was Onofre Guerra, Guerra's brother and a defendant in this case. The government presented evidence that Guerra was observed at the loading site while the vehicle was being loaded with the 280 pounds of marijuana and just prior to its departure. Also observed with Guerra was Desi Guerra.

The government also presented evidence that Guerra has been identified during an undercover operation involving another defendant, Dario Maldonado, as the source of the marijuana that was delivered to an undercover agent. When Guerra was arrested in this present case, he admitted the continued use of cocaine as recently as moments before his arrest. In his possession at the time of his arrest was written documentation of his drug trafficking activities. The government argued that all of this information must lead to the conclusion that Guerra will continue dealings in

-4-

drugs if allowed out on bond pending trial and for this reason he constitutes a danger to the community.

The government also presented evidence that Guerra was a flight risk because his community ties were suspect. First, when he was arrested, Guerra listed his place of employment as Jackson Auto Service, 1009 West Jackson, Pasedena, Texas. The government presented evidence that the owners and operators of Jackson Auto Service had recently been convicted in federal court for distributing multi-ton quantities of marijuana from that location during the time Guerra claims to have worked there. Across the street from Jackson Auto Service is Rueben's Automotive, which is owned by Desi Guerra. The adjoining property is also owned by Desi Guerra and in the past was occupied by two other defendants in this case. Guerra's home address is 414 Finfrock; Desi Guerra owns 412 and 415 Finfrock. The government also offered proof that 415 Finfrock was the location of the seizure of 415 pounds of marijuana in January 1990. The government presented evidence that this case involves a family run marijuana enterprise that began in 1977. According to the government testimony, Desi Guerra and Onofre Guerra are the co-heads and they utilize family members as couriers for the distribution of marijuana and currency. The government presented evidence that this family operation imports as much as two tons of marijuana a week. Desi Guerra is married to Guerra's sister; Onofre Guerra, as we have noted, is Guerra's brother. In view of this background, the government urges that Guerra's family

ties and his ties to the community are suspect. For this reason, the government contends that he has failed to overcome the presumption that no condition or combination of conditions will reasonably assure his presence at trial and he is therefore a flight risk.

After hearing all of this evidence, the magistrate concluded that Guerra was actively engaged in marijuana trafficking and was a danger to the community. The magistrate also concluded that there was reason to believe Guerra would flee the jurisdiction if released. For these reasons, the magistrate held that no conditions or combination of conditions could assure the safety of the community or the presence of Guerra if he were released pending trial. Accordingly, the magistrate ordered the pretrial detention of Guerra.

C

The magistrate judge conducted a detention hearing for Rueben on May 30, 1991. The government sought pretrial detention on the dual grounds that Rueben constituted both a risk of flight and a danger to the community. The government called a special agent as a witness. Rueben's counsel cross-examined this witness, but did not call witnesses or present evidence.

The government first presented evidence that Rueben was identified by a confidential informant in 1987 as being involved with his brothers in the distribution of cocaine. The source of the cocaine was identified as "Adam," and the pager number was

assigned to Adam Troy Contreras.  In October 1990, while Rueben was on probation, Adam Troy Contreras was intercepted on a pen register and wiretap of a telephone at Rueben's Automotive, 1012 W. Jackson, Pasedena, which was Rueben's business address.  According to the government, the intercepted conversations include Rueben arranging transactions in cocaine to take place at Rueben's Automotive.  The government further offered proof that surveillance established that these transactions did take place and at least one delivery took place at Rueben's residence.

In May 1989, Rueben pled guilty to a Texas state felony charge of possession of cocaine and was placed on two years probation. The government presented evidence that six months after being placed on probation, Rueben participated in loading two vehicles at 1018 W. Jackson with approximately one hundred pounds of marijuana each.  One of these vehicles was later seized in Baton Rouge. Eight months after being placed on probation, Rueben was discovered in possession of at least 511 pounds of marijuana at his brother's 415 Finfrock residence.  This marijuana was seized pursuant to a search warrant based on information received concerning Rueben's activity at that location.  According to the government, immediately prior to the execution of the search warrant surveillance revealed the presence of two vehicles registered to Rueben at 415 Finfrock and travel by Rueben, carrying suitcases, between 415 Finfrock and the nearby Rueben's Automotive.

Fourteen months after being placed on probation, Rueben was arrested in Pennsylvania for unlawfully possessing a firearm. The government stated that Rueben admitted to the arresting officers that he had delivered 1,100 pounds of marijuana several days earlier and gave the location of the delivery.[3] At this location, officers found approximately $950,000 cash, approximately twenty-five pounds of marijuana, and the horse trailer that had been used to transport the marijuana. During this Pennsylvania incident, Rueben violated numerous terms of his Texas probation.

The government presented evidence that while Rueben was on pre-trial release on his Pennsylvania firearms charge and prior to the entry of his guilty plea, which was also seventeen months after being placed on probation in Texas, he arranged cocaine transactions from his business and home. The government stated that these transactions were revealed by a court authorized wiretap of the telephone at Rueben's Automotive and that contemporaneous surveillance also established that Rueben did in fact conduct these transactions.

Twenty-three months after being placed on probation in Texas and five months after being placed on probation in Pennsylvania for the firearms conviction, Rueben's residence at 7707 Grahamcrest was searched pursuant to a search warrant. Authorities discovered cocaine and eight firearms, one of which was fully automatic. A

---

[3]In his appeal brief Rueben denies that he made this statement.

simultaneously executed search warrant of Rueben's Automotive revealed a quantity of marijuana.

The government contended that all of these factors led to the conclusion that Rueben would continue to deal in drugs if released on bond pending trial, and for this reason Rueben constituted a danger to the community. The government also argued that Rueben's family ties are actually a contributing factor to his continued criminal activity and increase the likelihood of his continued criminal activities because his wife and two brothers are criminal associates.

Following the hearing at which all of this evidence was presented, the magistrate found that Rueben was actively engaged in marijuana and cocaine trafficking and that no conditions or combination of conditions could assure the safety of the community if he were released. The magistrate also concluded that Rueben had not rebutted the presumption of risk of flight. Accordingly, the magistrate ordered that Rueben be detained pending his trial.

## II

### A

On September 30, 1991, four months after his hearing, Guerra filed a motion to revoke the detention order. In his motion, Guerra alleged the following:

(1)  He is thirty-six years old, a citizen of the United States, and has never had a passport;

(2)  All of his identification records are in his name and there has been no suggestion that he has used any other name or identity;

(3)  He has been married for sixteen years and has two sons;
(4)  He and his wife have lived at 414 Finfrock in Pasadena, Texas, for the last thirteen years;
(5)  His house is mortgaged to Homestead Savings;
(6)  His two sisters and their families have lived in the Houston area for many years;
(7)  He has completed his GED;
(8)  Because of the economic hardship of his being in custody and not being able to work his family is about to be evicted from their home;
(9)  His family are faithful members of a church and regularly attend church services.

Guerra argued that there are conditions that will assure his appearance and that he will not endanger the safety of any other person or the community. On October 4, 1991, the government filed an opposition and on November 27, 1991, the district court denied Guerra's motion to revoke the detention order. Guerra did not appeal this order.

On February 11, 1992, nine months after his detention hearing, Rueben filed with the district court his motion to revoke the detention order. Rueben stated the following facts:

(1)  He is thirty years old and acquired resident alien status in 1968;
(2)  He has lived in the Houston area continually for the last twenty-three years;
(3)  In the Pre-Trial Report it states that he has established community ties through school, employment, residence, and family;
(4)  All of his identifications are in his name and the government does not suggest hat he has used any other name or identity;
(5)  He has been married since 1984;
(6)  He and his wife have lived in a house in Houston for nearly ten years;
(7)  He has no record of failing to appear for court in his prior matters;
(8)  His business was the subject of a government search in April 1991 but he was not arrested for crimes relating to the seized documents until May 1991;

(9)  If he were planning to flee, he would have done so during the time between the search and the arrest;

(10)  Not taking advantage of this opportunity to flee is indicative of his commitment to stay in the community and resolve this matter;

(11)  It is virtually impossible to prepare his defense while he is incarcerated.

Rueben contended that there were conditions that would reasonably assure his appearance at trial and that he will not endanger the safety of any other person or the community. The government filed its opposition on July 9, 1992. On July 16, 1992, the district court denied Rueben's motion. Rueben did not appeal this order.

B

On August 24, 1992, at an unrelated hearing involving Guerra and Rueben, the district court judge commented that pretrial services was reviewing the pretrial detention orders of unspecified defendants. The prosecutor requested that the district court include a stay provision in any order of release. According to the government, the district court denied this request and stated that no stay of release order would be granted under any circumstances, including an appeal of that release order to this court.

On September 8, 1992, the government received an order entered on September 3 requiring it to show cause why Guerra and Rueben should be detained pending trial. The government filed its opposition the following day. On September 9 the district court revoked the detention order and issued conditions of release for Guerra and Rueben. The district court ordered that Rueben and Guerra be released on $100,000 unsecured bonds under the standard

-11-

conditions and (1) that they be subject to electronic monitoring for ninety days, with a schedule to be set by pretrial services and to include a reasonable curfew; (2) that their travel be restricted to Harris County; and (3) that they be subject to random urinalysis and treatment if requested by pretrial services.

The government received a copy of this order on September 9 at approximately 6:30 P.M., and was informed that Guerra and Rueben would be released September 10 at 10:00 A.M. following an in-court appearance. The government filed a notice of appeal at 8:30 A.M. on September 10, 1992, and this court granted a stay of the order revoking detention pending the outcome of this appeal.

### III

On appeal, the government argues that the district court clearly abused its discretion in revoking the detention order for Guerra and Rueben because the factors set forth in § 3142(g) were not weighed and no reasons for the action were assigned. The government further contends that the district court's revocation of the detention order and imposition of conditions of release lacks support in the record. The government also urges that the district court was required to issue written findings concerning why the magistrate's detention order was revoked. On the other hand, Guerra and Rueben argue that the government has failed to demonstrate that the district court has clearly and erroneously abused its discretion in allowing bail. Guerra and Rueben further argue that the Bail Reform Act does not require the district court

to issue written findings in granting conditions of release. Guerra and Rueben finally assert that the district court is permitted to release detained defendants for preparation of their defense or for compelling reason.

IV

A

When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release. United States v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985). Absent an error of law, we must uphold a district court order "if it is supported by the proceedings below," a deferential standard of review that we equate to the abuse-of-discretion standard. United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989). On appeal, the question becomes whether the evidence as a whole supports the conclusions of the proceedings below. United States v. Trosper, 809 F.2d 1107, 1111 (5th Cir. 1987).

B

Under the Bail Reform Act, the existence of probable cause to believe that the defendant committed a crime in violation of 21 U.S.C. § 801, et seq., creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e). We have previously held that when

the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, the presumption of flight has been rebutted. United States v. Jackson, 845 F.2d 1262, 1266 (5th Cir. 1988). We have also held, however, that the risk of continued narcotics trafficking on bail does constitute a risk to the community. Hare, 873 F.2d at 798 (citing United States v. Hawkins, 617 F.2d 59 (5th Cir.), cert. denied, 449 U.S. 952 (1980)). For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required. Hare, 873 F.2d at 799; Fortna, 769 F.2d at 249.

The rebuttable presumption of § 3142(e) shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion; however, the mere production of evidence does not completely rebut the presumption. Hare, 873 F.2d at 798. In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society. Id. at 798-99.

Section 3142(g) lists factors the judicial officer considers in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. These include the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug; the weight of the evidence

-14-

against the person; the history and characteristics of the person, including the person's character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

C

After reviewing the evidence as a whole, we conclude that the decision of the district court simply is not supported by the proceedings below. We can only assume that implicit in the district court's order is the finding that Guerra and Rueben have overcome the presumption that they are flight risks or a danger to the community. It is a finding that is unsupported. First, Guerra and Rueben have not rebutted the presumption that they are flight risks. Their alleged family ties was hardly more than a reflection of the drug conspiracy itself. It is certainly not the sort of family ties from which we can infer that a defendant is so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence. Moreover, the fact that one owns a house is not compelling as a tie to the community when its loss through forfeiture is a possibility because of its use in drug trafficking. Similarly, a job is meaningless as an indicator of future appearances before the court when it is directly

connected to drug trafficking. Additionally, neither of these witnesses presented any testimony to rebut the government's strong case against them. In short, Guerra and Rueben have introduced no evidence to support their position that their appearance at trial can be reasonably assured. Accordingly, they have not rebutted the presumption that they are flight risks and that no condition or combination of conditions will reasonably assure their appearance at trial.

Guerra and Rueben have likewise not rebutted the presumption that they are a danger to the community. The government presented substantial evidence to show that Guerra and Rueben have continuously engaged in the trafficking of drugs for several years, including while being on parole or shortly after being released from parole. Guerra and Rueben, on the other hand, have presented absolutely no evidence whatsoever to indicate that they will not continue to engage in drug trafficking if released on bail pending trial. Guerra and Rueben have therefore not overcome the presumption that they constitute a danger to the community.

V

We conclude that the district court erred in revoking the pretrial detention order for Guerra and Rueben. The district court's decision to revoke the detention order and issue conditions of release for Guerra and Rueben is not supported by the proceedings below. The evidence as a whole does not support the conclusion that Guerra and Rueben are neither a flight risk nor a

danger to the community.  We therefore reverse and vacate the order of the district court.

REVERSED and VACATED.