UNITED STATES of America

v.

Richard Louis MINNS a/k/a Harlan
Allen Richardson a/k/a Richard
Louis O'Toole, Defendant.

No. 3–94–272–M.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 4, 1994.

Eric J.R. Nichols, Bert Isaacs, U.S. Atty. Office, S.D. Tex., Houston, TX, for U.S.

Arch C. McColl, III, Bruner, McColl and McColloch, Dallas, TX, Michael Logan Ware, Law Office of Michael Logan Ware, Fort Worth, TX, for defendant.

### MEMORANDUM OPINION AND DETENTION ORDER

KAPLAN, United States Magistrate Judge.

Defendant is charged by indictment with passport related crimes in violation of 18 U.S.C. §§ 1542, 911 and 1425. The case is pending in Cause No. H–93–68, styled *United States v. Richard Louis Minns,* in the United States District Court for the Southern District of Texas.

### PROCEDURAL BACKGROUND

Defendant was arrested at DFW International Airport on July 19, 1994. An initial

appearance was held on July 20, 1994 before a United States magistrate judge in the Northern District of Texas. The government filed a motion to detain the defendant as a serious flight risk under 18 U.S.C. § 3142(f)(2)(A). Defendant requested a detention hearing in the Northern District of Texas, but waived a Rule 40 hearing and consented to the removal of the case to the Southern District of Texas for trial.

A detention hearing was held on July 25, 1994.[1] Defendant appeared in person and through his counsel of record, Arch C. McColl III and Michael L. Ware. Assistant United States attorneys Eric Nichols and Bert Isaacs appeared for the government. Both sides announced ready. The hearing lasted over eight hours. The Court heard testimony from six witnesses and considered other evidence proffered by the parties. A total of 36 documents were introduced into evidence. The Court also reviewed letter briefs from the attorneys, conducted telephone interviews with those persons offered as potential third-party custodians, and conferred with pre-trial service officers from both the Northern District and Southern District of Texas.

On July 26, 1994, the Court entered a temporary detention order to enable the Immigration and Naturalization Service to act on a detainer notice filed in the case. *See* 18 U.S.C. § 3142(d). This order expires on August 5, 1994. The Court now issues this memorandum opinion and order of detention.

### FACTS

Defendant is a 64 year old immigration consultant who has lived abroad for the past 14 years. He stands accused of making false statements in passport applications and illegal procurement of citizenship. On March 6, 1993, an eight count indictment was returned by a federal grand jury in the Southern District of Texas. This indictment was sealed to protect the government's ongoing investigation and efforts to apprehend the defendant. Although neither the defendant nor his attorneys were notified of the indictment and outstanding arrest warrant, the government worked with foreign law enforcement agencies in an attempt to locate the defendant. He was finally arrested on July 19, 1994 while passing through customs at DFW International Airport en route to his home in Vancouver, British Columbia.

Defendant presented customs officials with a United States passport issued to Harlan Allen Richardson.[2] Customs agents confiscated this passport and an Irish passport issued to Richard Louis O'Toole. Both passports bore a picture of the defendant and contained entry and exit stamps from other countries. Special Agent Peter Hargraves testified that these were two of seven passports from four different countries held by the defendant under five different names. Hargraves stated that the defendant has four United States passports—two in the name of Harlan Allen Richardson and one each issued to Richard Louis Minns and Richard Louis O'Toole.

The evidence shows that the defendant was divorced from his first wife in 1979. He sold his house and moved from the United States in 1980 or 1981. Since that time, the defendant has lived in Europe and the Bahamas. Defendant has used at least 13 different names for various purposes during the past 14 years—Richard Louis Minns, Richard Louis O'Toole, Arlie Leo Mahan, Lender Robert Chester, Dani Milo, Derek Clarke Douglas–Anthony, Dr. Richardson Courtney–Browne, Ricardo Courtney–Browne, Dr. R. Anthony, Harlan Allen Richardson, Richard Mahan, Richard O'Toole–Mahan and Dr. Allen Richardson.

Defendant became a citizen of Ireland and legally changed his name to Richard Louis

---

1. A detention hearing was originally set for July 22, 1994. Counsel for the defendant filed a motion to continue the hearing until July 25, 1994. This motion was not opposed by the government and was granted by the Court. The detention hearing was held within five days of the initial appearance in accordance with 18 U.S.C. § 3142(f).

2. Harlan Allen Richardson was born on August 7, 1931 in Bronson, Texas and died in an automobile accident in 1967. Defendant was born on August 17, 1929 in Bell County, Texas and is very much alive.

O'Toole. There is also some evidence that he became a citizen of Israel and changed his name to Dani Milo. In any event, defendant maintained his United States citizenship until 1986. He formally renounced his citizenship in a sworn affidavit filed with the United States Embassy in London. Defendant stated that he no longer wanted dual citizenship because "I have lived in Europe for the past five years and intend to continue to do so."

Defendant currently works as an immigration consultant helping clients obtain second passports by becoming naturalized citizens of various countries through economic investments. He transacts business under the name of Faxon International, S.A. Faxon is based in London and has offices in 39 cities around the world. Hargraves believes that the defendant is familiar with the extradition laws of various countries through his business contacts. A notation contained in the defendant's personal diary refers to a Swiss attorney, Dominique Poncet, as the "[b]iggest extradition attorney in the world. Attorney for Vesco, Cornfield, etc."

Hargraves also testified about the nature and extent of the defendant's assets. He said that the defendant holds 11 credit cards issued in six different names. These include American Express cards in the United States, United Kingdom and Switzerland, Barclay Visa, Barclay Premier, Eurocard, Visa–Swiss Francs, Diners Club Suisse, National West Gold Mastercard and National West Access Mastercard. Defendant also has access to several foreign bank accounts. Hargraves stated that the defendant has accounts under different names in Switzerland, London, Israel, Luxembourg, the Netherlands, Vancouver and Phoenix. One account with the Bank of Liechtenstein had a balance of over $6.3 million as of July 4, 1994. Most of this information is confirmed by diary entries which were admitted into evidence at the detention hearing.

Defendant has one prior conviction for passport fraud. On October 16, 1985, the defendant attempted to obtain a United States passport in the name of Robert Lender Chester. He was arrested by customs officials and pled guilty to a misdemeanor offense. The court assessed a $3,000 fine and placed the defendant on probation for five years. The evidence shows that the defendant violated the terms of his probation by applying for five passports using three different names since 1986.

The Internal Revenue Services has issued a notice of levy in the amount of $830,000 for past-due taxes owed by the defendant. A total of $22,000 in cash was seized from the defendant at the time of his arrest.

There is also a $32 million judgment against the defendant in a civil lawsuit. This case arises out of the much publicized shooting of Barbara Piotrowski in October, 1980. Piotrowski alleges that the defendant conspired to have her killed after she ended their relationship. Four people have been tried and convicted for their role in this brutal attack. Defendant has never been formally charged in any criminal proceeding. The trial court struck the defendant's pleadings in the civil suit as a result of on-going discovery abuse. A jury then determined the amount of damages to be awarded to Piotrowski. The case is currently on appeal, but the judgment has not been stayed or superseded and remains subject to execution. Defendant is vigorously prosecuting this appeal and has spent in excess of $1 million in legal fees. He is represented by former Texas Supreme Court Justice William Kilgarlin and appellate specialist Bruce Bennett. Kilgarlin and Bennett testified that the sanctions entered by the trial court were improper because the defendant was physically unable to comply with the discovery orders. They anticipate the case will be reversed. G.P. Hardy, trial counsel for Piotrowski, testified that the defendant failed to obey numerous court orders without justification or excuse. Hardy believes that the judgment will be affirmed on appeal.

Defendant told law enforcement officials at the time of his arrest that he had not been to Texas in ten years. He also said that he would not have returned had he known there was an outstanding arrest warrant.

Two of the defendant's children, Cathy Minns and Michael Minns, testified at the detention hearing. Cathy described the defendant as a loving father who is committed

to his family. She said that they were barraged by hate mail and telephone calls after the Piotrowski shooting. Cathy testified that her father is a fighter and has never backed away from anything. She said that he still has ties to Houston and frequently talks about coming back "after the appeal comes through."

Michael Minns testified that the defendant left the country and started using different names in order to conduct his business and avoid harassment. He said that his father wants to fight the appeal in order to clear his reputation. Michael estimated the defendant's net worth at $1 million. He also explained that the $6 million on deposit in the Bank of Liechtenstein was in a trust account and not freely accessible to the defendant. Michael stated that the defendant could post a $25,000 cash bond and would comply with any additional conditions imposed by the court.

Defendant maintains that he should be released pending trial on certain conditions. These conditions include: (1) a substantial cash bond; (2) electronic, video and telephone monitoring; (3) third-party custody with his mother-in-law; (4) house arrest with 24–hour security; and (5) frequent supervision by pre-trial services. The government argues that detention is required because no condition or combination of conditions will reasonably assure the defendant's appearance at trial.

### APPLICABLE LAW

The procedures for pre-trial release and detention are governed by the Bail Reform Act of 1984. 18 U.S.C. § 3141, *et seq.* The Act requires pre-trial release on personal recognizance or upon the execution of an unsecured bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The court may also impose certain conditions on pre-trial release in appropriate cases. *See* 18 U.S.C. § 3142(c).

 Pre-trial detention is not favored and is strictly limited by statute. *See* 18 U.S.C. §§ 3142(f)(1)(A)–(D) and 3142(f)(2)(A) and (B); *United States v. Byrd,* 969 F.2d 106, 109 (5th Cir.1992). A defendant may only be detained when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of other persons or the community." 18 U.S.C. § 3142(e). In making this determination, the court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the accused; (3) the history and characteristics of the accused; and (4) the nature and seriousness of the danger that would be posed by the person's release. 18 U.S.C. § 3142(g); *United States v. Rueben,* 974 F.2d 580, 586 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993).

 The government seeks to detain the defendant as a serious flight risk under 18 U.S.C. § 3142(f)(2)(A). Therefore, the government must prove that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e). These facts must be proved by a preponderance of the evidence. *United States v. McConnell,* 842 F.2d 105, 110 (5th Cir.1988); *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985). The evidentiary presumptions contained in section 3142(e) do not apply in this case.

### FINDINGS AND CONCLUSIONS

 The Court finds that the following facts have been established by a preponderance of the evidence:

(a) Defendant is not a citizen of the United States or lawfully admitted to this country for permanent residence;

(b) Defendant has seven passports from four different countries under five different names;

(c) Defendant has used 13 different names since 1980;

(d) Defendant has substantial assets in other countries, including foreign credit cards and access to foreign bank accounts. The defendant has financial resources ranging from $1 million by his own admission to over $6 million according to the government;

(e) Defendant has lived outside the United States since 1980 or 1981 and currently resides in Vancouver, British Columbia;

(f) Defendant works as an immigration consultant and is familiar with the extradition laws of various countries through his foreign contacts;

(g) Defendant applied for five passports using three different names while on probation for passport fraud;

(h) There is a civil judgment in excess of $32 million pending against the defendant in Texas. Although this judgment is on appeal, it has not been stayed or superseded and remains subject to execution;

(i) The Internal Revenue Service has issued a notice of levy in the amount of $830,000 for past-due taxes owed by the defendant;

(j) Defendant stated in the presence of a government agent that he would not have returned to Texas had he known there was an outstanding warrant for his arrest.

The Court therefore concludes that the defendant is a serious flight risk. *See United States v. Quartermaine*, 913 F.2d 910, 916–17 (11th Cir.1990) (defendant was a flight risk because he had access to considerable funds outside the United States, stated that Honduras was his country, and had business ties to Panama and Colombia); *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir.1990) (defendant detained as a flight risk because of substantial foreign contacts); *United States v. Cole*, 715 F.Supp. 677, 679 (E.D.Pa.1988) (defendants posed serious flight risk because they held and used for-

eign passports and told undercover agents they would flee if arrested).

■ Defendant maintains that there are conditions that can be imposed to reasonably assure his appearance at trial. He suggests: (1) a $750,000 cash bond; (2) electronic, video and telephone monitoring; (3) third-party custody with his mother-in-law; (4) house arrest and 24–hour security provided by armed guards; (5) supervision by pre-trial services; and (6) any other reasonable conditions imposed by the court. Defendant has offered to pay the costs associated with monitoring his pre-trial release by making a cash deposit in addition to the amount of his bond.

Although this case presents a unique opportunity to test the outer limits of pre-trial release under the Bail Reform Act, the Court declines to do so. The condition of house arrest with armed security guards is unprecedented in the Northern District and Southern District of Texas. Private security personnel have no legal authority to stop, detain or arrest a defendant for violating the terms of a pre-trial release order. *See* 18 U.S.C. § 3148; *United States v. Santillanes*, 848 F.2d 1103, 1107 (10th Cir.1988). Electronic monitoring systems and other technological devices can be circumvented and rendered inoperative.[3] The conditions proposed by the defendant would, at best, "elaborately replicate a detention facility without the confidence of security such a facility instills." *United States v. Orena*, 986 F.2d 628, 632 (2d Cir.1993), *quoting United States v. Gotti*, 776 F.Supp. 666, 672 (E.D.N.Y.1991).

The Court is also concerned about the ability of pre-trial services to effectively monitor the defendant in the home of his third-party custodian. The house is over 4,000 square feet with five bedrooms and a swim-

---

**3.** Counsel for the defendant advised the Court of a telephone conference he had with one of the pre-trial officers in Houston about electronic surveillance. Counsel reported that this pre-trial officer was personally familiar with a case in the Southern District that involved house arrest with electronic and telephone monitoring. The officer told the attorney that this procedure worked "very well" and that "new technology would make it even easier."

The Court then spoke with the pre-trial officer. He verified the accuracy of the information reported by defense counsel, but stated that the

attorney only asked him general questions about electronic monitors. The specifics of this case were never discussed. The officer said that the case he mentioned to defense counsel involved a pedophile who was not a flight risk. Electronic and telephone surveillance were effective to monitor the defendant's actions in order to protect the community, not to assure his appearance at trial. The pre-trial officer then told the Court *that he did not believe that house arrest or electronic monitoring would be effective in the instant case.*

ming pool. The backyard adjoins three other lots and is divided by a six foot cedar fence. There is no alley. The physical layout of the house and surrounding area do not permit surveillance of the backyard.

Finally, the Court is deeply troubled by the policy implications of pre-trial release in this case. House arrest, private security and electronic surveillance are enormously expensive and would not be options available to persons of ordinary means. Yet the defendant argues for these conditions of release based, in part, on his ability to finance them. It would be inimical to our system of justice to permit a defendant to "buy" his release pending trial.

### ORDERS

The Court concludes that there are no conditions of release that will reasonably assure the appearance of the defendant as required. It is therefore ORDERED that:

1. The government's motion for detention is granted.

2. The defendant shall be detained without bond pending the disposition of this case or until further order of the Court. The United States marshal shall produce the defendant in court as directed.

3. The defendant is committed to the custody of the Attorney General for confinement. Defendant shall be held in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant shall be afforded a reasonable opportunity to consult in private with his attorney.