# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2009

No. 09-20444
Summary Calendar

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ROBERT ALLEN STANFORD, also known as Sir Allen Stanford, also known as Allen Stanford,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-342-1

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Robert Allen Stanford appeals the district court's Detention Order and its denial of his Motion to Reconsider and/or Reopen the Court's Detention Order. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTS AND PROCEEDINGS

On June 18, 2009, a federal grand jury in Houston, Texas returned a twenty-one count indictment against Robert Allen Stanford ("Stanford"), Chairman of the Board of Directors of Stanford International Bank, Ltd. ("SIBL"), and four co-defendants. The indictment alleges that Stanford, controlling and operating a web of financial services entities under the parent company Stanford Financial Group ("SFG"), which included SIBL and its affiliates, conspired to commit and did commit mail fraud and wire fraud, conspired to commit securities fraud and money laundering, and conspired to obstruct and did obstruct a Securities and Exchange Commission ("SEC") investigation. Essentially, the indictment charges Stanford and four others with operating a "Ponzi scheme" to defraud investors—a scheme whereby Stanford marketed and sold certificates of deposit held at SIBL purportedly worth billions of dollars. These certificates delivered consistent profits for investors, but the returns were simply the investors' own money or funds Stanford obtained from new investors. The indictment also charges Stanford with attempting to cover up the scheme after the SEC investigation began.

United States Magistrate Judge Frances Stacy held a detention hearing on June 25, 2009 and determined that "there is a risk of flight for Mr. Stanford." Nevertheless, the Magistrate Judge concluded that Stanford should not be detained pending trial, reasoning that the imposition of bail conditions was sufficient to secure Stanford's appearance at future court proceedings. Among these conditions, the Magistrate Judge required Stanford to secure a $500,000 bond, make a $100,000 cash deposit, and abide by certain custodial and travel limitations. The United States Government ("Government") filed a motion for *de novo* review by the district court, seeking a revocation of the Magistrate Judge's release of Stanford pending trial.

After a hearing held on June 29, 2009, the district court revoked the Magistrate Judge's release order. In its Detention Order, the district court determined that, based on nineteen findings of fact, Stanford is a "serious flight risk" and "there is no condition or combination of conditions of pretrial release that will reasonably assure his appearance at trial." Stanford filed a Motion to Reconsider and/or Reopen the Court's Detention Order ("Motion to Reconsider"). The district court denied the motion. Stanford appeals.

## STANDARD OF REVIEW

"Once the district court has determined that pretrial detention is necessary, this Court's review is limited." *United States v. Westbrook*, 780 F.2d 1185, 1189 (5th Cir. 1986). "Absent an error of law, we must uphold a district court order if it is supported by the proceedings below, a deferential standard of review that we equate to the abuse-of-discretion standard." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (internal quotation marks omitted). We "review[] the factual basis for the order revoking release under the clearly erroneous standard." *United States v. Aron*, 904 F.2d 221, 223 (5th Cir. 1990).

A district court's ruling on a motion to reopen a detention hearing under 18 U.S.C. § 3142(f) is reviewed under an abuse-of-discretion standard. *See United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

## DISCUSSION

### I.    Detention Order

"Under the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Id.* "[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient; both are not required." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citation omitted) (emphasis in original). "[I]n determining whether there

are conditions of release that will reasonably assure the appearance of the person as required," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In ascertaining whether risk of flight warrants detention, "the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *Fortna*, 769 F.2d at 250 (citation omitted).

Stanford argues that the district court was required to adopt the Magistrate Judge's release determination and abused its discretion by failing to do so. The district court is required to eliminate every possible condition of release that would assure his presence at trial, Stanford argues, before it can determine that he is a flight risk and must be detained. Attacking the district court's findings of fact, Stanford asserts that the record evidence does not support detention. He points to his family ties in Houston, Texas, his lack of access to funds, and the Government's inability to account for large sums of money invested with him. Furthermore, Stanford asserts that, contrary to the Government's evidence, he did not maintain a secret Swiss bank account from which he withdrew money while the SEC was investigating SFG, he does not maintain an international network of contacts, and his extensive international travel is unremarkable given the scope of his business. Stanford also claims that the Government's admission that one of his Antiguan passports had been located after the district court's detention determination wholly undermines that ruling. He further notes that other defendants in high-profile white collar cases have been granted pretrial release with various bond conditions. Stanford argues that he should have been treated likewise.

Stanford's arguments are without merit. As an initial matter, the district court was under no obligation to adopt the magistrate judge's release determination. Stanford points to no relevant caselaw to the contrary. In fact, as we have long noted, "[w]hen the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *Rueben*, 974 F.2d at 585 (citation omitted). "In such a situation, the district court, making an independent determination, can order pretrial detention even though the magistrate has refused to do so." *Fortna*, 769 F.2d at 249. Furthermore, neither the Bail Reform Act nor our caselaw requires a court to be absolutely certain that no possible non-detention option will prevent flight before determining that a defendant must remain in custody. As previously noted, the flight risk determination is made on the preponderance of the evidence standard. *See, e.g., Fortna*, 769 F.2d at 250.

Turning to the § 3142(g) evaluation, the district court did not abuse its discretion in concluding that the relevant factors weighed in favor of detention. A review of the record demonstrates that the district court's determination is supported by the proceedings below and must therefore be affirmed. *Rueben*, 974 F.2d at 586. Stanford's challenges to the record evidence do nothing to undermine the detention determination and do not show that the district court clearly erred in its findings of fact.

With respect to the first § 3142(g) factor, the "nature and circumstances of the offense charged," the district court properly took into account the daunting sentence—375 years of imprisonment—Stanford faces if found guilty on all twenty-one counts in determining that he presents a risk of flight. Stanford does not contest this sentence exposure. He only asserts that he is committed to challenging the Government's case and that other white collar defendants have been released on bond. Stanford's comparison with other defendants does

nothing to undermine the district court's analysis and is unavailing in any event. The district court considered other white collar cases and discarded the comparison as inapplicable. The district court correctly noted that, as opposed to Stanford, who is both an American citizen and a citizen of Antigua and Barbuda, and has resided in that island nation for some fifteen years, the defendants granted bail were American citizens with strong ties to their communities.

The district court properly reasoned that the second § 3142(g) factor, "the weight of the evidence against the person," also tipped the scales in favor of detention. While Stanford contests the charges against him, the district court did not abuse its discretion in determining that the Government presented a strong case. Beyond the evidence supporting the twenty-one counts of the indictment, at the detention hearing, the Government also presented evidence that Stanford maintained a secret Swiss bank account, had withdrawn $100 million from this account in late 2008 while the SEC was investigating SFG, and much of the investors' money entrusted to Stanford remains unaccounted. In fact, over $1 billion has yet to be located. The Government also presented evidence that Stanford was the only individual with control over these funds. The district court was not remiss in considering the possibility that a substantial bankroll of unaccounted for funds would make it easier for Stanford to flee.

The third § 3142(g) factor, "the history and characteristics of the person," was correctly evaluated by the district court and there is no abuse of discretion with respect to its determination. In considering this factor, a court looks to available information regarding "family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). With respect to his family ties, Stanford argues that his family is in Houston, and that he grew up

in Texas, went to school in Texas, and is deeply committed to the Houston, Texas community. The district court determined that "Stanford's family ties to Houston are tenuous at best and of recent vintage." This conclusion is supported by the record evidence. Stanford admitted that he established a new residence in Houston in preparation for his required presence during the pendency of the case against him. Several of his children have recently moved to Houston to be closer to him during the proceedings. While Stanford did grow up in Texas, he has spent the past fifteen years abroad. His international travels have been so extensive that, in recent years, he has spent little or no time in the United States. Since 2005, he has traveled to over thirty countries on five continents. Accordingly, these attenuated connections are "certainly not the sort of family ties from which we can infer that [Stanford] is so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence." *Rueben*, 974 F.2d at 586. Even if, as Stanford claims, his international travel is simply a function of his business needs, that has no bearing on the determination that his ties to Houston are both limited and recent.[1]

Stanford's financial resources and international network also support the district court's detention determination. While Stanford argues that his assets have been frozen, only a fraction of his wealth has been accounted for and at least one secret bank account has been uncovered. Furthermore, he has demonstrated an ability to raise funds from other sources. Stanford does not dispute the district court's finding that an individual Stanford did not meet until April 2009 paid $39,000 for one year's rent on a luxury apartment for Stanford to live in pending trial. Stanford also maintains numerous international

---

[1] While the district court made no findings of fact with respect to Stanford's alcohol abuse and criminal history, the Government points out—and Stanford does not dispute—that he has a long history of alcohol abuse and failed to disclose three prior arrests.

contacts and, as previously discussed, regularly travels abroad. During the district court hearing, the Government presented testimony from one of Stanford's former pilots that Stanford not only engaged in almost non-stop international travel on the fleet of six private jets and one helicopter belonging to SFG and its affiliates, but also took steps to conceal his whereabouts. Furthermore, Stanford has several passports and initially failed to disclose that he possessed two Antiguan passports—one expired diplomatic passport and one unexpired passport—in addition to his American passport. At the hearing before the Magistrate Judge, Stanford stated that he did not know where his unexpired Antiguan passport was located. At the hearing before the district court, however, it became clear that this passport had been accessible to Stanford months prior to the detention hearing. It appears that Stanford did not surrender this passport until pre-trial detention became a real prospect, presumably in an attempt to bolster his argument that detention was not warranted. Stanford makes much of the fact that the SEC found the expired diplomatic Antiguan passport after the district court hearing. The fact that this expired passport was located by the Government does nothing to diminish the inconsistencies the district court found in Stanford's testimony regarding his other passports.

Because neither party argues that the fourth § 3142(g) factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," is applicable to Stanford, the district court made no findings of fact with respect to this element. Neither party argues that it should have been taken into account. Accordingly, our inquiry need go no further.

As a review of the record, the district court's findings of fact, and the applicable caselaw demonstrates, the district court did not abuse its discretion in determining that Stanford is a flight risk and should be held in pre-trial

8

detention. Stanford has the means, the motive, and the money to flee. He faces a potential sentence of 375 years in prison, has access to an international network of contacts, has previously concealed his travels, has demonstrated an ability to access funds from acquaintances even if his own assets are frozen, has established his primary residence in Antigua and Barbuda for the past fifteen years, and has little family ties in Houston, Texas, having only recently established some of those connections for purposes of his impending trial. In sum, the record as a whole supports the district court's detention determination, and Stanford has failed to show that the district court committed clear error with respect to the findings of fact which underpin its decision. *Aron*, 904 F.2d at 223. Accordingly, the district court's Detention Order is affirmed.

## II. Motion to Reopen

Under the Bail Reform Act, "[t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f)(2)(B).

Stanford argues that the district court abused its discretion in denying his Motion to Reconsider. This motion, filed within a week of the district court's Detention Order, contains, according to Stanford, newly discovered evidence that the court should have considered. Stanford also argues that, because the district court denied his motion before the Government had an opportunity to file a response, the evidence provided in the Motion to Reconsider must be deemed admitted.

Stanford's arguments fail. He makes only conclusory allegations that the information he sought to submit was newly discovered, providing no indication of how the evidence was discovered or why it had been previously unavailable.

Despite being given numerous opportunities to call witnesses before the district court, Stanford declined to do and never asked for more time to locate witnesses. Nevertheless, a week after the detention determination, he sought to introduce the affidavits of friends, family, and former employees. Most of these individuals were present during the district court hearing. It cannot therefore be said that their testimony was newly discovered or previously unavailable. The documentary evidence Stanford appended to his Motion to Reconsider suffers from the same deficiencies. Stanford's proposition that because the district court denied his Motion to Reconsider before the Government's response was due, the facts contained in the motion must be taken as admitted, is supported by neither law nor logic. The district court acted efficiently in denying Stanford's unsubstantiated motion. Such a practice does not translate into admissions on the Government's part. Even accepting such a proposition, because the evidence presented was not new, the district court did not abuse its discretion in denying Stanford's Motion to Reopen.

## CONCLUSION

The district court's Detention Order and its denial of Stanford's Motion to Reopen are AFFIRMED.