# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 8, 2022

Lyle W. Cayce
Clerk

No. 21-40878

United States of America,

*Plaintiff—Appellee*,

*versus*

Saad Aziz; Maaz Aziz,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CR-382-104

---

Before Southwick, Haynes, and Higginson, *Circuit Judges*.

Per Curiam:[*]

Brothers Saad Aziz and Maaz Aziz were indicted for conspiracy to commit wire fraud, mail fraud, and money laundering. The Government requested (and was eventually granted) a pretrial detention order based on its contention that the brothers presented a serious flight risk. The brothers now challenge that order. They argue that the district court improperly

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

lumped their detention assessments, misclassified them as flight risks, and failed to consider alternatives to detention.

For the reasons set forth below, we AFFIRM.

## I.     Background

In 2020, the FBI launched an investigation into a series of armed robberies of cell phone stores in and near Dallas, Texas.  As the investigation unfolded, the FBI uncovered a much larger conspiracy: a gray market in which wholesalers obtained high-end cell phones from device traffickers and then exported and sold the cell phones abroad.  At the top of the conspiracy was the wholesaler RJ Telecom.  Together with its related entities, RJ Telecom exported more than $100 million of stolen devices.  SCS Supply Chain LLC ("SCS")—a company owned by Saad Aziz and co-founded by Maaz Aziz—was one of those related entities.

The brothers were indicted on September 9, 2021.  They were charged with conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349, conspiracy to commit money laundering under 18 U.S.C. § 1956(h), and conspiracy to transport stolen property in interstate and foreign commerce (as well as the aiding and abetting of such transportation) under 18 U.S.C. §§ 371, 2314, and 2.  On September 23, 2021, the brothers self-surrendered.  The Government then moved to detain them.

 After a detention hearing, the magistrate judge denied the Government's motion and ordered release.  The Government filed an emergency motion for a stay of the magistrate judge's order and appealed to the district court.  The district court granted a stay and held a two-day hearing on the appeal of the release order.  After concluding that the brothers were flight risks and that no set of conditions would reasonably assure their appearance, the district court revoked and set aside the magistrate judge's order.  The brothers each filed timely notices of appeal.

No. 21-40878

## II.    Jurisdiction & Standard of Review

Because detention orders are considered final judgments for purposes of 28 U.S.C. § 1291, we have jurisdiction over this appeal.  18 U.S.C. § 3145(c).  "Absent an error of law," we will uphold a district court's pretrial detention order "if it is supported by the proceedings below, a deferential standard of review that [this court] equate[s] to the abuse-of-discretion standard."  *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (internal quotation marks and citation omitted).  Questions of law are, of course, reviewed de novo, *United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006), whereas factual findings supporting the detention order are reviewed for clear error, *United States v. Aron*, 904 F.2d 221, 223 (5th Cir. 1990).

## III.    Discussion

The brothers briefed their arguments separately on appeal, but each argues that: (1) the district court erred by not rendering an individualized assessment regarding each brother's flight risk; (2) the district court abused its discretion in determining that the brothers were flight risks; and (3) the district court failed to adequately consider alternative options to detention. We address each in turn.

## A.    Individualized Assessment

This court has previously explained that a district court may not "lump[] all the defendants together" and issue "a uniform blanket bail" decision. *United States v. Briggs*, 476 F.2d 947, 948 (5th Cir. 1973).  Rather, the "Bail Reform Act . . . clearly contemplates that each person has the right to separate consideration, to stand or fall on the merits of his own case rather than on the misdeeds of his co-defendants."  *Id.*  Seizing on this language, Maaz Aziz argues that the district court improperly "lumped [the brothers] together" and failed to make an individualized detention determination.

But this case is not *Briggs*. *Briggs* involved eight unrelated co-defendants, and the district court's order was ambiguous as to which factors applied to which defendants. *See id.* at 948. Conversely, Saad Aziz and Maaz Aziz are not simply co-defendants; they're also brothers, with nearly identical backgrounds and relationships. They were both born in Pakistan and immigrated to the United States. They have both lived in Dallas for over a decade. They have the same mother and sister (both of whom also live in Dallas), and they have the same family living in Pakistan. That relationship is particularly relevant here because those ties to Pakistan (as the Government argues) or to Texas (as the brothers argue) are key to the flight risk determination.

There are also differences between the brothers, of course. But the district court appropriately noted those differences when relevant. We see no error in the district court treating Saad and Maaz Aziz as the brothers they are: two individuals with nearly identical backgrounds and relationships.

## B.    Flight Risk Classification

Pursuant to the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, the Government may seek to detain an individual if there is "a serious risk that such person will flee" and fail to appear for trial. *Id.* § 3142(f)(2)(A). The district court here determined that there is "a serious risk that Maaz and Saad Aziz will flee," and the brothers contend that that determination was an abuse of discretion.

To begin, we note again the deferential standard of review applicable to this case. *See Rueben*, 974 F.2d at 586. We owe great deference to the district court, which held a two-day hearing and observed the witnesses. We cannot reverse the district court in its factual determinations absent a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

4

We see no such error. The district court reasonably concluded that the brothers presented a flight risk based on several facts. On a corporate level, SCS has foreign ties—Saad Aziz is the director of SCS Canada, and the brothers traveled to Canada prior to SCS Canada's incorporation. Moreover, SCS opened a branch in Dubai in 2020; Saad Aziz was listed as the branch manager; and Maaz Aziz traveled to Dubai around the time that the branch was established. The court also found that SCS was still operating and "bringing in significant amounts of money," which the brothers could access. Additionally, the court cited the ongoing investigation into as many as eighty different SCS bank accounts and that there was evidence SCS transferred money out of the country after law enforcement executed a search warrant on an SCS warehouse.

On a personal level, the brothers have "several cousins" in Pakistan. Saad Aziz has at least one Pakistani bank account and owns real property in Pakistan. Moreover, records from Customs and Border Protection showed that between 2018 and 2021, Maaz Aziz had "flown internationally at least thirteen times, traveling to Mexico, Qatar, Columbia, Canada, and Dubai." During that same period, Saad Aziz left the United States at least six times, traveling to France, Dubai, Canada, and Mexico.

The brothers make several arguments in response to this evidence. Primarily, they describe their connections to Pakistan as loose; their connections to Texas as strong; and dispute the resources that SCS has. These arguments support the notion that there is evidence that they were not flight risks, but there is evidence they were. That is exactly the situation where we defer to the district court rather than decide factual disputes ourselves. We cannot say, given the facts described above, that the district court abused its discretion in concluding that the brothers are a flight risk.

5

No. 21-40878

## C.    Alternatives to Detention

If a district court concludes that a defendant poses a serious flight risk, the Bail Reform Act requires the court to hold a detention hearing to "determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required." *Id.* § 3142(f). The Bail Reform Act includes a non-exhaustive list of additional conditions—such as travel restrictions, reporting requirements, and a curfew—which may be imposed to assure appearance. 18 U.S.C. § 3142(c)(1)(B). The statute instructs courts, when determining whether any set of conditions will reasonably assure a defendant's appearance, to consider four factors, only three of which are relevant here[1]: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ; (2) the weight of the evidence against the person; [and] (3) the history and characteristics of the person . . . ." *Id.* § 3142(g).

After thorough consideration of the § 3142(g) factors, the district court determined that no combination of release conditions would reasonably assure the brothers' appearance at further proceedings. We perceive no error in the district court's analysis of the § 3142(g) factors.

Nevertheless, despite the fact that the district court expressly concluded that conditions of release would not be adequate, the brothers contend that the district court erred as a matter of law by failing to address any specific conditions of release and why they would be inadequate. Neither the text of the Bail Reform Act nor our caselaw *requires* that a district court do so expressly. The only factors the statute explicitly requires the district

---

[1] The fourth factor applies when detention is premised on risk to the community. *See* 18 U.S.C. § 3142(g)(4). Here, the brothers' detention is premised on a flight risk concern, not risk to the community, so, as the district court appropriately determined, that factor does not apply.

court to state consideration of are those in § 3142(g).  The brothers cite a case from another circuit to argue that the district court must expressly set out the specific conditions and why they do not suffice.  *See United States v. Berrios-Berrios*, 791 F.2d 246 (2d Cir. 1986).  We need not decide whether we agree with *Berrios-Berrios* because, unlike in that case, here there is evidence of "apparent misrepresentations" that the brothers made about their finances and property owned abroad.  In other words, the facts are different in this case than those in *Berrios-Berrios*.  Given the particular facts of this case and the district court's extensive consideration of the § 3142(g) factors, we are unable to conclude that the district court abused its discretion in this case.

## IV.    Conclusion

For the foregoing reasons, the district court's detention order is AFFIRMED.