UNITED STATES of America,
Plaintiff,

v.

Jay Dee WALTERS, Cheryl
Walters, Defendants.

Nos. 99–40012–01–SAC,
99–40012–02–SAC.

United States District Court,
D. Kansas.

Jan. 20, 2000.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On May 27, 1999, the grand jury returned a five count superseding indictment charging the defendants, Jay Dee Walters and Cheryl Walters, with one count of conspiracy to manufacture and distribute in excess of one kilogram of a mixture or substance containing a detectable amount of methamphetamine (Count 1) and one count of harboring a federal fugitive, Billy J. Hill (Count 2). Count 3 of the indictment charges Cheryl Walters with money laundering. Count 4 charges Jay Dee Walters with money laundering. Prior to trial, the court granted the government's motion to dismiss the money laundering counts. In Count 5, the United States seeks forfeiture of certain property allegedly used to commit and to facilitate the conspiracy to manufacture and distribute methamphetamine charged in Count 1. The Walters are husband and wife.

On August 4, 1999, this court entered a memorandum and order granting in part and denying in part the pretrial motions filed by the defendants. *See United States v. Walters,* 188 F.R.D. 591 (D.Kan.1999). Cheryl Walters' motion for severance of her case from her codefendant's under Fed.R.Crim.P. 14 was denied. *Id.* at 598–602. However, the court granted the defendants' request to bifurcate the guilt phase from the criminal forfeiture count. *Id.* at 598.

Trial in this matter commenced on December 1, 1999. Both defendants pursued a coercion defense, arguing that although they committed acts in furtherance of the conspiracy to manufacture methamphetamine and that they concealed and harbored Hill from authorities, they only did so out of mortal fear of reprisal from Hill.[1] On December 14, 1999, the jury began its deliberations. On December 15, 1999, the jury sent a note to the court indicating that they were deadlocked. Over the defendants' objections, the court read an *Allen* instruction. The jury subsequently informed the court that they had reached a verdict on Count 1 against Jay Dee Walters, but were hopelessly deadlocked on Count 2 against Jay Dee Walters and both counts against Cheryl Walters. Ultimately, in open court, the court received the jury's verdict. The court asked the foreperson whether the jury was in fact hopelessly deadlocked and whether any further deliberations might prove fruitful. The foreperson, as well as the rest of the jury, indicated that further deliberations would be futile and that they could not reach a unanimous verdict on the undecided counts. Hearing no objection from the parties, the court accepted the jury's verdict on Count 1 finding Jay Dee Walters guilty of conspiring to manufacture methamphetamine and declared a mistrial a manifest necessity on the remaining counts.

Trial on the forfeiture count against Jay Dee Walters was set to commence on January 18, 2000, but Walters and the government were able to reach an agreement which obviated the need for trial.

### Pretrial Release of Cheryl Walters

Following her indictment, Cheryl Walters was placed on pretrial release. Posi-

---

1. On January 6, 2000, this court entered a memorandum and order denying Jay Dee Walters "Motion for Judgment of Acquittal, or, In the Alternative, For a New Trial (Dk.147)" and his other motion titled "Separate Defendant Jay Dee Walters' Motion for Summary Judgment/Dismissal of Forfeiture Count" (Dk.152). *See United States v. Walters,* 2000 WL —— (D.Kan. Jan. 6, 2000). A more complete account of the trial and history of the case is contained in that memorandum and order.

tive tests for drug use while on pretrial release resulted in her incarceration pending trial. After the court declared a mistrial, on December 20, 1999, Cheryl D. Walters filed a motion for pretrial release (Dk.134). Cheryl Walters sought pretrial release based upon the following changes in circumstances:

1. Walters has learned from her five and a half months incarceration at CCA Leavenworth the importance of adhering to the terms and conditions of pretrial release.

2. Walters has not used illicit drugs while incarcerated.

3. Walters has a "solid" pretrial release plan:

> The Logans, longtime members of the Topeka Community and owners of Logan Business Machines, would take Walters into their home and provide her with food, shelter and access to a car. The Logans agree to act as third party custodians of Walters and would report any violation of the terms and conditions of release imposed by the court. In exchange, Walters would provide care for Mrs. Logan who suffers from Multiple–Sclerosis. Mrs. Logan is currently in the hospital for treatment of MS but is expected to be released soon from the hospital.

4. Walters promises to abide by all terms and conditions imposed by the magistrate judge.

5. Walters seeks a severance from her codefendant in the second trial, and therefore, although trial is now set for February 9, 2000, trial might not take place for several months.

The government opposed the defendant's motion, essentially taking the position that there had been no material change in circumstances warranting pretrial release and that the defendant's new pretrial release plan was less solid than the one that had previously failed. During the hearing, the government elicited testimony from Mr. Logan in which Logan opined that Cheryl Walters and his son

shared a boyfriend/girlfriend relationship. Logan also admitted that his son has had prior arrests for domestic battery and his son was in the process of a bitter divorce from his current wife.[2] Mr. Logan believed it possible that his daughter-in-law was a methamphetamine user and embezzler.

On January 4, 2000, the magistrate judge held a hearing to consider Walters' motion. At the conclusion of the hearing, the magistrate judge granted the defendant's motion, setting a $25,000 O/R bond and setting several conditions of pretrial release. The government filed a notice of appeal from that order. The magistrate judge granted the government's request to stay the pretrial release order pending review by the district court.

On January 12, 2000, this court conducted a hearing to consider the government's motion. After reviewing the evidence presented to the magistrate judge, hearing the additional evidence and arguments offered by the parties, and based in part on its own independent recollection of this case, the court denied the government's motion and affirmed the order of pretrial release granted by the magistrate judge.

## STANDARD OF REVIEW

By statute, 18 U.S.C. § 3145(a)(1), the government may seek review in the district court of a magistrate judge's order granting a defendant pretrial release. The district court conducts a de novo review of the magistrate judge's order of detention. *United States v. Tortora,* 922 F.2d 880, 883 n. 4 (1st Cir.1990); *United States v. Carlos,* 777 F.Supp. 858, 859 (D.Kan.1991); *see United States v. Rueben,* 974 F.2d 580, 585–86 (5th Cir. 1992), *cert. denied,* 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993). The district court must make its own de novo determination of the facts with no deference to the magistrate judge's findings. *United States v. Koenig,* 912 F.2d 1190, 1192 (9th

---

**2.** Walters proffered that her boyfriend's di-

vorce from his wife is now final.

Cir.1990); *United States v. Gaviria,* 828 F.2d 667, 670 (11th Cir.1987). In the same vein, the district court ultimately must decide the propriety of detention with no deference to the magistrate judge's conclusion. *Id.*

De novo review does not require a de novo evidentiary hearing. *United States v. Alonso,* 832 F.Supp. 503, 504 (D.Puerto Rico 1993); *United States v. Bergner,* 800 F.Supp. 659, 661 (N.D.Ind. 1992); *see United States v. Koenig,* 912 F.2d at 1193. The district court may elect to "start from scratch" and follow the procedures for taking relevant evidence. *United States v. Torres,* 929 F.2d 291, 292 (7th Cir.1991). The district court may incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted there. *United States v. Chagra,* 850 F.Supp. 354, 357 (W.D.Pa.1994); *see United States v. Messino,* 842 F.Supp. 1107, 1109 (N.D.Ill.1994). The district court may conduct evidentiary hearings if "necessary or desirable," and the hearings are not limited to situations where new evidence is being offered. *Koenig,* 912 F.2d at 1193. These matters are left to the district court's sound discretion. *Id.; Bergner,* 800 F.Supp. at 661.

### Legal Standards Rebuttable Presumption

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.,* provides a rebuttable presumption of risk of flight or danger to the community when a defendant has been charged with certain crimes.

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. 801 *et seq.*)....

18 U.S.C. § 3142(e). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption." *United States v. Quartermaine,* 913 F.2d 910, 916 (11th Cir.1990). Because the superseding indictment in this case charges an offense for which carries a maximum term of imprisonment of ten years or more as prescribed by the Controlled Substances Act, it raises the rebuttable presumptions of risk of flight and danger to the community.

In *Quartermaine,* the court of appeals summarized the proper analysis of the rebuttable presumption of 18 U.S.C. § 3142(e):

> Once the statutory presumptions are raised, the defendant carries the burden of production to come forward with evidence to rebut the presumptions. The defendant's obligation to come forward with evidence does not shift to the defendant the government's burden of persuasion. *United States v. King,* 849 F.2d [485] at 488 [(11th Cir.1988)]. Therefore, Quartermaine had the burden to produce evidence "to suggest that he ... [was] either not dangerous or not likely to flee if turned loose on bail." *[U.S. v.] Hurtado,* 779 F.2d [1467] at 1479 [(11th Cir.1985)]. Even if this evidence is sufficient to rebut the statutory presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relative to factors listed in section 3142(g)." *United States v. King,* 849 F.2d at 488 (*quoting United States v. Portes,* 786 F.2d 758, 764 (7th Cir.1985) (citation omitted)).

913 F.2d at 916. *See United States v. Miller,* 625 F.Supp. 513, 519 (D.Kan.1985) ("The burden of production imposed on a defendant is 'to offer some credible evidence contrary to the statutory presumption.' ") (citation omitted).

### Burden of Proof

The government bears the burden of proof. The government must prove

risk of flight by a preponderance of the evidence. *Carlos,* 777 F.Supp. at 860 (*citing Quartermaine,* 913 F.2d at 917); *United States v. King,* 849 F.2d 485, 489 (11th Cir.1988); *United States v. Orta,* 760 F.2d 887, 891 (8th Cir.1985). The government must prove dangerousness to any other person or the community by clear and convincing evidence. *King,* 849 F.2d at 485 n. 3; 18 U.S.C. § 3142(f).

### 18 U.S.C. § 3142(f)

Section 3142(f) provides in pertinent part:

> The hearing [to determine whether detain or release a criminal defendant] may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

### 18 U.S.C. § 3142(g)

18 U.S.C. § 3142(g) provides:

(g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

### Analysis

After much deliberation, this court deemed it appropriate to deny the government's request to overturn the magistrate judge's decision placing Walters on pretrial release. Having viewed the government's case during the first trial, the weight of the evidence against this defendant is substantial. Although there is evidence to support the defendant's coercion defense, there is much evidence to cast doubt on the sincerity of this defendant's fear of reprisal from Hill and her inability to contact law enforcement officers during the time Hill resided on her property. The court also agrees with the government that the "change in circumstances" identified by Walters is not overwhelming. It is also true that Walters used illicit drugs while on pretrial release the first time and that such conduct is never countenanced by the court.

Notwithstanding these observations, the pretrial plan offered by the defendant is reasonable and provides a means of monitoring Walters' compliance with the terms and conditions of pretrial release while awaiting retrial. Walters is a longtime resident of Kansas and has family, including two children, who reside in the area. In light of her repeated promises to the court, the unique circumstances of this case, and the ostensible feasibility of her pretrial release plan which includes employment, the defendant will be given one more chance to be released while awaiting (re)trial. Violations of the terms and conditions of this release order will not be tolerated. *Any* violation of the terms and conditions of release imposed by this court, including but not limited to the use of illicit drugs, will be addressed swiftly and directly.

### Cheryl Walters' "Motion for Severance" (Dk.164).

Cheryl Walters renews her motion for severance under Fed.R.Crim.P. 14. Walters argues that retrial with her husband will prejudice her fact that her husband, pursuant to an agreement with the government, took a polygraph examination and "failed" that examination which centered on questions about the date that certain letters regarding the Walters' fear of Hill were written. Jay Dee Walters "failed" that examination and subsequently admitted that the letters were written after Hill left the Walters' farm, but contended that the letters were nevertheless written when the Walters still feared Hill. Second, Cheryl Walters contends that because only she will be retried on the conspiracy count, the jury will draw improper and prejudicial inferences that will deprive her of a fair trial.

The government responds, arguing that nothing presented by the defendant demonstrates that severance is appropriate in this case. In regard to the polygraph examination, the government contends that a limiting instruction [3] similar to the one provided to the jury in the first trial adequately and completely address the defendant's concerns. In regard to the defendant's argument that the jury will draw improper inferences from the fact that only she is being tried on the conspiracy count, the government again argues that appropriate limiting instructions will insure the defendant a fair trial. In short, the government contends that the defendant has not carried her burden of demonstrating that severance is necessary to avoid unfair prejudice.

**3.** Jury INSTRUCTION NO. 29 provided:

You have heard evidence concerning a polygraph examination which Jay Dee Walters voluntarily took, pursuant to an agreement or stipulation with the government, prior to trial. In considering this evidence it is important for you to know that the reliability and accuracy of polygraph examinations is unsettled and that a number of factors, including the skill, knowledge and training of the polygraph examiner, may further affect the reliability and accuracy of the results of the examination.

When considering evidence regarding the polygraph examination, it is important for you to remember that you are the sole judges of the facts in this case and it is for you, and only you, to determine the credibility of witnesses and weight of evidence in this case. No machine is superior to your ability to assess the credibility of witnesses and you must not place undue importance on the results of the polygraph examination. A fundamental premise of our criminal trial system is that the jury is the "lie detector."

The polygraph examination does not prove or disprove any element of the crimes with which Jay Dee Walters is charged. At most, the polygraph examination may indicate that at the time Jay Dee Walters was examined, he may or may not have been telling the truth. Evidence concerning the polygraph examination constitutes only a small portion of the evidence in this case, so you should only give it such weight, if any, you deem appropriate in light of these admonishments.

The fact that Jay Dee Walters took a polygraph examination should play no role in your deliberations concerning the charges against Cheryl Walters. Consequently, Government's Exhibit # 90, and all of the evidence concerning that polygraph examination and the results of that examination, are irrelevant to your deliberations concerning the charges against Cheryl Walters.

## Analysis

Although the court agrees that the evidence regarding Jay Dee Walters' polygraph examination did not prejudice Cheryl Walters in the first trial and would likely not unfairly prejudice Cheryl Walters in a second joint trial, the court is persuaded that retrial of Cheryl Walters jointly with her husband poses a substantial risk of depriving Walters of her right to a fair trial. The difficulties of retrying the two codefendants together at this juncture are self-evident. The Walters are husband and wife. Both are named as coconspirators. Because only Cheryl Walters would be tried on both counts, the jury would naturally and almost assuredly be concerned why only she was being tried on the conspiracy count. And although the court could provide the jury with carefully drafted limiting instructions, under the unique circumstances of this case the court has serious reservations about the efficacy of any limiting instruction to the jury. In the exercise of its discretion, the court grants Cheryl Walters' motion for severance from the retrial of her codefendant and husband. *See* Fed.R.Crim.P. 14.

So that it is clear, the court does not announce some immutable rule that severance is always necessary following the retrial of codefendants or coconspirators when one defendant is convicted of some but not all of the same counts with which his or her codefendant is charged but not found guilty. Instead, the court is persuaded that in this case the failure to grant Cheryl Walters' motion for severance poses a substantial risk of depriving her of her right to a fair trial and that the risk of unfair prejudice clearly outweighs the benefits of a joint trial.

A status conference is currently set for Wednesday, January 26, 2000, at 10:00 a.m. At that conference, the court will discuss with the parties the order in which the two defendants will be tried. After consulting with the parties, the court will also set a trial date in each case.

IT IS THEREFORE ORDERED that the government's request to reverse the magistrate judge's order of release of Cheryl Walters, dated January 4, 2000, and titled "Notice of Appeal" (Dk.157), is denied.

IT IS FURTHER ORDERED that this court adopts in full the magistrate judge's order of release of Cheryl Walters dated January 4, 2000.

IT IS FURTHER ORDERED that counsel for the defendant, Dwight Miller, shall notify this court, the United States Marshal and the United States Probation Department when Mrs. Logan is released from the hospital so that final arrangements for Mrs. Walters' pretrial release can be accomplished.

IT IS FURTHER ORDERED that Cheryl Walters' motion for severance (Dk.164) is granted. The court will set separate trial dates for Cheryl Walters and Jay Dee Walters after consulting with counsel during the January 26, 2000, status conference.